**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0700n.06

No. 10-3672

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Jun 29, 2012***

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOHN FINLEY, IV, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  McKEAGUE and WHITE, Circuit Judges; BARRETT, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.**  After a jury trial, Defendant-Appellant John Finley, IV (Finley), was found guilty of distributing 50 grams or more of cocaine base (crack).  He was sentenced to a mandatory minimum sentence of life in prison.  Finley appeals, asserting (1) ineffective assistance of counsel and (2) that he should be re-sentenced under the Fair Sentencing Act of 2010, which was passed while this appeal was pending, and under which the mandatory minimum sentence for Finley's offense would be ten years.  We **AFFIRM**.

**I.**

Finley sold 248 grams of cocaine to a confidential informant, Damon Towns, who had called Finley to arrange a meeting where they discussed the purchase.  At the meeting, neither man used

---

[*] The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

the word cocaine or specified whether the sale would be for powder cocaine or crack cocaine, but

Finley told Towns that the product would "come back" when you "rock it up," and that it "almost

look[s] like it's rocked up already." Towns testified that "rocked up" means crack-cocaine. The

men met again later that evening and Finley purchased nine ounces of the drug for $6000.

Finley was arrested and charged with the knowing and intentional distribution of 50 grams

or more of a mixture or substance containing a detectable amount of cocaine base (crack), U.S.C.

§ 841(a)(1), (b)(1)(A). At the arraignment, Finley entered a plea of not guilty.

The government filed an information giving notice of its intent to rely in sentencing on one

prior drug conviction for Finley. The prior conviction raised the mandatory minimum sentence from

ten years to twenty years. 21 U.S.C. §§ 851(a)(1), 841(b)(1)(A). A change of plea hearing was

scheduled for a few days later, but prior to the hearing Finley told his counsel that he was not going

to change his plea to guilty and that he had retained new counsel. Finley's new counsel proceeded

to file a series of frivolous motions, which the district court summarily denied.[1]

---

[1]The motions included, *inter alia*, a Motion for a Bill of Particulars, a Motion for Production of Classified Records related to Defendant and/or this Case, a Motion for Dismissal due to Grand Jury Irregularities, and a Request for Production of All Classified Records. The Motion for a Bill of Particulars contained requests including, "2. Please identify the meaning of the letters 'CR' in the case number listed on the docket," "9. Please identify the locus delicti of the alleged crimes in Count 1, in relation to the Constitution of the United States and the 10th Amendment," and "12. Please identify the difference between the 'UNITED STATES OF AMERICA' and the United States." The Motion for Dismissal Due to Grand Jury Irregularities argued that the grand jury system is unconstitutional and requested that the court dismiss the proceedings and "initiate an investigation of the US Attorneys office and their practices, to bring in the FBI or US Marshals or an 'independent' agency of the government to conduct that investigation, and to investigate each and every conviction in which these [grand jury] proceedings took place." An additional, lengthy motion argued that 18 U.S.C. § 3231, the statute conferring original jurisdiction to United States district courts over offenses against the laws of the United States, is unconstitutional because no quorum was

At the final pretrial hearing, the district court judge suggested to Mr. Finley that he should give strong consideration to accepting the government's plea deal, which would have resulted in a sentence of twenty years to life, because the government was likely to find another previous felony conviction for drugs and he would wind up with life imprisonment if convicted.

Finley's counsel then filed an objection to the use of his prior conviction on the basis that his conviction was void because the trial court failed to properly impose post-release control at sentencing. The government then filed a second information providing notice that it intended to use two additional felony drug convictions to increase Finley's sentence. If found guilty, Finley now faced a mandatory minimum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A). Subsequently, Finley filed a second objection to the use of prior convictions on the same basis as the first objection—that the convictions were void because of improper imposition of post-release control.

During the trial, the jury heard from DEA Agent John Clayton, who after taking possession of the drugs conducted an initial "presumptive test" that showed cocaine was present. The jury also heard from Alexandra Ambriz, a forensic chemist with the DEA, who testified that she determined through testing that the drugs were cocaine base and not powder cocaine. The defense also called two chemists, Benjamin Corpus, who had been hired by Finley's original lawyer, and Lindsay Reinhold. However, both Corpus and Reinhold conceded that their tests indicated that the substance was cocaine base.

---

in place when the House of Representatives voted on the bill in 1947.

The jury found Finley guilty of distributing more than 50 grams of cocaine base. Finley filed a motion for new trial, which was denied. Prior to sentencing, Finley filed a sentencing motion and a separate sentencing memorandum requesting downward departures based on the sentencing disparity between powder cocaine and crack cocaine and on the basis that mandatory minimum life sentences constitute cruel and unusual punishment. Both were denied. Finley's advisory Guidelines sentencing range, based on a total offense level of 32 and six criminal history points, was 151 to 188 months. However, under 21 U.S.C. § 841(b)(1)(A), Finley was sentenced on May 19, 2010 to the then mandatory minimum sentence of life in prison. Under the 2010 Fair Sentencing Act, which was enacted and became effective on August 3, 2010, Finley's statutory-minimum sentence would be ten years. 21 U.S.C. § 841(b)(1)(B).

## II. Ineffective Assistance of Counsel

Finley claims he was denied effective assistance of counsel based on numerous missteps by his counsel prior to, during, and after his trial, including the various frivolous motions filed prior to trial. Finley also claims his attorney persuaded him not to enter into a plea agreement with the government, failed to properly prepare for the central issue the defense sought to dispute at trial, namely, whether the drug mixture he was accused of selling was crack cocaine, and generally proved himself incompetent to handle the case through frivolous motions and bizarre comments.

A. The Record is Not Sufficiently Developed to Address Finley's Ineffective Assistance of Counsel Claim on Direct Review

Under *Strickland v. Washington*, a defendant claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient and (2) that the error was prejudicial. 466 U.S.

668, 686 (1984). However, because the evidence introduced at trial will be devoted to issues of guilt or innocence, "the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis." *Massaro v. United States*, 538 U.S. 500, 505 (2003). The record may not contain evidence of the reasons for apparently odd or deficient actions taken by counsel. Accordingly, "[t]he appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse." *Id.*

Therefore, a defendant generally may not an raise ineffective assistance of counsel claim for the first time on direct appeal because "there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990)). Such claims are best brought in a post-conviction proceeding under 28 U.S.C. § 2255, where the parties can develop an adequate record on the issue. *Id.* (citing *United States v. Brown*, 332 F.3d 363, 368 (6th Cir. 2003)). When, however, the record is adequate to assess the merits of the defendant's allegations, they may be considered. *See Wunder*, 919 F.2d at 37 (6th Cir. 1990) (holding that the record was adequate to consider and dismiss defendant's claim that he received ineffective assistance of counsel); *United States v. Pierce*, 62 F.3d 818 (6th Cir. 1995) (finding without analysis that the record was adequately developed to consider and dismiss defendant's ineffective assistance claim).[2]

---

[2]Finley cites no case in which a claim of ineffective assistance of counsel was considered and *granted* on direct review.

Finley argues that his trial counsel's incompetence is so apparent that this Court need not wait for further development of the record. He argues that in addition to the frivolous pretrial motions, the motions objecting to the use of Finley's prior convictions on the basis that the trial court failed to properly impose post-release control at sentencing were clearly wrong because the prior convictions had arisen from conduct that occurred prior to the existence of post-release control in Ohio. (Finley Reply Br. at 5 (citing *State v. Foster*, 845 N.E.2d 470 (2006)).) Finley notes that his counsel's request for a downward departure suggests he was altogether unaware that Finley was not subject to the advisory guidelines but was facing a statutory penalty requiring a mandatory-minimum sentence of life in prison. Finally, Finley argues that his attorney was clearly deficient in abandoning negotiations with the government and proceeding to trial even though the government and defense chemists agreed that the substance Finley sold was crack-cocaine.

Finley raises serious questions about the competence of his defense counsel. However, we are not persuaded to depart from the general rule that such a claim should be brought in a post-conviction proceeding pursuant to 28 U.S.C. § 2255. The record does not contain evidence regarding why defense counsel filed the various motions at issue or whether he had a sound reason to call the defense's chemists as witnesses. Additionally, there is evidence in the record to suggest that Finley may have instructed his counsel not to accept any plea agreement that acknowledged the sale of crack cocaine. The parties should be given the opportunity to develop the record on these issues. Accordingly, we decline to hear Finley's ineffective-assistance claim on direct appeal.

### III.  Re-Sentencing Under the Fair Sentencing Act of 2010

Finley further argues that he should be re-sentenced under the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ("FSA"), which was passed while Finley's appeal was pending, and which raised the quantity thresholds for mandatory minimum sentences for offenses involving crack-cocaine, thereby reducing the disparity between sentences for crack and powder cocaine. Under the current version of 21 U.S.C. § 841, Finley's offense, involving 248 grams of cocaine and two or more prior felony drug offenses, does not meet the 280 gram threshold now required for a mandatory minimum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii). The government responds that under the "general savings statute," 1 U.S.C. § 109, the FSA may not be retroactively applied to Finley.

> The general savings statute provides in relevant part:
>
> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

We have previously held that the general savings statute applies to the FSA. *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). In *Carradine*, the defendant, who pleaded guilty to possession with intent to distribute cocaine and, like Finley, was sentenced prior to the enactment of the FSA, argued he was entitled to the benefit of the FSA, which had been passed while his appeal was pending, and under which he would not have been subject to the 60-month statutory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(iii). *Id.* We concluded that the FSA "contains no express statement that it is retroactive nor can we infer any such express intent from its plain language."

Accordingly, we concluded the district court properly applied "the penalty provision in place at the time Carradine committed the crime in question." *Id.*

Our sister circuits have uniformly reached the same result and declined to apply the FSA to defendants in Finley's situation, i.e., defendants who were sentenced prior to enactment of the FSA. *See United States v. Goncalves*, 642 F.3d 245, 252–255 (1st Cir. 2011); *United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011); *United States v. Reevey*, 631 F.3d 110, 114–15 (3d Cir. 2010); *United States v. Bullard*, 645 F.3d 237, 248–49 (4th Cir. 2011); *United States v. Doggins*, 633 F.3d 379, 384 (5th Cir. 2011); *United States v. Bell*, 624 F.3d 803, 814–15 (7th Cir. 2010); *United States v. Smith*, 632 F.3d 1043, 1047–49 (8th Cir. 2011); *United States v. Baptist*, 646 F.3d 1225, 1229 (9th Cir. 2011); *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010).

In *Dorsey v. United States*, — U.S. —, 2012 WL 2344463 (June 21, 2012), the Supreme Court recently held that the FSA applies to all offenders sentenced after the FSA's effective date, August 3, 2010, even if their crimes were committed prior to August 3, 2010. This clarification does not help Finley, however, as he was sentenced prior to August 3, 2010. It thus appears that *Carradine*, as clarified by *Dorsey*, controls. In other words, the district court properly sentenced Finley in accordance with the law in effect at the time of his sentencing.

Finley seeks to distinguish *Carradine* on the basis that "the saving clause does not preserve the harsher criminal punishment contained in a superseded statute in a case, like Mr. Finley's, where this now-superseded law would (1) no longer serve any legislative purpose, or (2) conflict with a changed constitutional landscape." (Finley Br. at 40–41.) In support of the first argument, Finley

cites *Hamm v. City of Rock Hill*, 379 U.S. 306 (1964), where the Supreme Court held that the passage of the Civil Rights Act of 1964 required vacating pending convictions under state trespass statutes for "sit-in" demonstrators, even though the demonstrations took place prior to the passage of the Act. *Hamm*, 379 U.S. at 308. The Supreme Court read the Civil Rights Act of 1964 to "prohibit[] the application of state laws in a way that would deprive any person of the rights granted under the Act." *Id.* at 311. The Court emphasized that after passage of the Act, the offending conduct could no longer be considered a crime, because the Act "substitutes a right for a crime." *Id.* at 314. Moreover, the Court relied on the Supremacy Clause, and found that nonfinal prosecutions under state law must give way to a conflicting federal law. *Id.* at 315.

*Hamm* also cited *United States v. Chambers*, 291 U.S. 217 (1934), for expressing a general principle of "imputing to Congress an intention to avoid inflicting punishment at a time when it can no longer further any legislative purpose, and would be unnecessarily vindictive." *Hamm*, 379 U.S. at 313. But *Chambers* dismissed pending prosecutions under the National Prohibition Act after the passage of the Twenty-First Amendment. *Chambers*, 291 U.S. at 222-23. Thus, *Chambers* also dealt with an enactment that rendered previously criminal conduct altogether legal. Further, the Court noted that the general savings statute dealt only with congressional repeal of statutes, and not constitutional amendments, which rendered statutes inoperative rather than repealed, as such. *Id.* at 224. Neither *Chambers* nor *Hamm* involved a congressional statute that mitigated a harsh sentencing law but fell short of making previously criminal conduct legal. On that question, a decade after *Hamm* was decided, the Supreme Court stated that "the saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time

of the commission of an offense." *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 661

(1974) (citations omitted).

Finley also argues that the general savings statute should be narrowly construed in light of

changes in Equal Protection jurisprudence since the Supreme Court decided *Marrero*. He cites

*Griffith v. Kentucky*, 479 U.S. 314 (1987), for the proposition that "Equal Protection requires

changes in the criminal law to apply to cases on appeal when the change occurred." (Finley Br. at

45.) *Griffith* held that when the Supreme Court announces a new constitutional rule of criminal

procedure, such as the rule announced in *Batson v. Kentucky* which prohibited race-based

peremptory challenges during jury selection, it must be applied retroactively to cases pending on

direct review. *Griffith*, 479 U.S. at 328. *Griffith* concerned the retroactive application of Supreme

Court decisions and did not purport to apply to congressional statutes such as the FSA, to which the

general savings statute applies. It is therefore clearly distinguishable from *Carradine*.

Finley nonetheless seeks to extend *Griffith* by arguing that the principles of equal protection

on which *Griffith* is based should apply with equal force to legislative changes, such as the FSA, that

are enacted in order to address perceived equal protection violations. But the general savings statute

requires Congress to furnish an express statement of retroactive application. Further, *Griffith*

specifically limited its holding to new rules announced by the Supreme Court, noting that:

> Unlike a legislature, we do not promulgate new rules of constitutional criminal procedure on a broad basis. Rather, the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.

*Griffith*, 479 U.S. at 323.

Accordingly, we conclude that our decision in *Carradine*, as clarified by *Dorsey*, controls and that Finley was properly sentenced under the penalty provision in place at the time he was sentenced for the crime in question.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** Finley's conviction and sentence.