NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2012-632

THE STATE OF NEW HAMPSHIRE

v.

KURT CARPENTINO

Argued: September 19, 2013
Opinion Issued: January 14, 2014

Michael A. Delaney, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Desmeules, Olmstead & Ostler, of Norwich, Vermont (George H. Ostler and Christopher A. Dall on the brief, and Mr. Ostler orally), for the defendant.

LYNN, J. The defendant, Kurt Carpentino, appeals an order of the Superior Court (Arnold, J.) denying his motion to amend one of his sentences, originally imposed in 2003, based upon an amendment to RSA 632-A:4 (Supp. 2002) (amended 2003, 2005, 2008, 2010) that took effect after the offense but before his conviction became final. We affirm.

# I

The pertinent facts are undisputed on appeal. In 2003, the defendant was found guilty of, among other charges, aggravated felonious sexual assault (AFSA), for which he was sentenced to serve 3 1/2 to 20 years in prison. The conviction was based upon an indictment that charged the defendant with AFSA under RSA 632-A:2, III, which provides that "[a] person is guilty of aggravated felonious sexual assault when such person engages in a pattern of sexual assault against another person, not the actor's legal spouse, who is less than 16 years of age." RSA 632-A:2, III (1996). "Pattern of sexual assault" is defined by statute as "committing more than one act under RSA 632-A:2 [the AFSA statute] or RSA 632-A:3 [the felonious sexual assault (FSA) statute], or both, upon the same victim over a period of 2 months or more and within a period of 5 years." RSA 632-A:1, I-c (1996). A person convicted of AFSA may be sentenced to a maximum of twenty years and a minimum of not more than one half of the maximum sentence. RSA 632-A:10-a, I(b) (2007). The indictment alleged a pattern of assault occurring between January 1, 2001, and December 27, 2001, consisting of "sexual penetration, against another, . . . who was then and there more than 13 years but less than 16 years old, and not his legal spouse." See RSA 632-A:3, II (1996) (amended 2006, 2008). During this period of time the defendant was seventeen or eighteen years old and the victim was fourteen or fifteen years old. The age difference between the two was less than three years.

In 2003, the legislature repealed and reenacted RSA 632-A:4, which defines misdemeanor sexual assault. Laws 2003, 316:7 (2003 Amendment). Among other things, the reenacted statute added subparagraph I(b), making the act of "engag[ing] in sexual penetration with a person, other than the actor's legal spouse, who is 13 years of age or older and under 16 years of age where the age difference between the actor and the other person is 3 years or less," a class A misdemeanor. Id. A person convicted of a class A misdemeanor may be sentenced to a maximum term of one year in prison. RSA 651:2, II(c) (2007). The 2003 Amendment took effect on January 1, 2004. Laws 2003, 316:10, I. Although the addition of subparagraph I(b) to RSA 632-A:4 apparently was intended to remove the conduct described therein from the purview of RSA 632-A:3, the legislature did not amend the latter statute until 2006, when it narrowed the scope of RSA 632-A:3, II to apply only "where the age difference between the actor and the other person is 3 years or more." Laws 2006, 162:1.

The defendant's conviction became final on May 5, 2004, when this court affirmed it by order. On March 30, 2012, he filed a motion to amend sentence, in which he urged that his conviction be treated as a misdemeanor based upon

the fact that the 2003 Amendment took effect before his conviction was final.[1] The trial court denied the motion, and this appeal followed.

II

The defendant argues that his sentence should be reduced because he is entitled to the retroactive application of the 2003 Amendment to RSA 632-A:4. He asserts that, because the legislature intended to reduce the penalty for sexual penetration between teenagers by making the offense a class A misdemeanor, his sentence should be amended to reflect the new, lesser punishment. More specifically, he argues that he should not be required to serve a sentence for pattern AFSA because, he contends, the 2003 Amendment removed his conduct from the ambit of the FSA statute, the putative violations of which constituted the predicate acts for the pattern charge. We disagree.

Resolution of this issue turns upon whether our savings statute, RSA 21:38 (2012), precludes the retroactive application of an ameliorative sentencing amendment to a criminal conviction that has not yet become final when the amendment takes effect. RSA 21:38 (2012) states: "No suit or prosecution, pending at the time of the repeal of any act, for any offense committed or for the recovery of a penalty or forfeiture incurred under the act so repealed, shall be affected by such repeal." We review matters involving statutory interpretation de novo. State v. Hayden, 158 N.H. 597, 599 (2009). To determine a statute's meaning, we first examine its language, and ascribe the plain and ordinary meaning to the words used. Chatman v. Brady, 162 N.H. 362, 365 (2011); see RSA 21:2 (2012). We interpret legislative intent from the statute as written and will neither consider what the legislature might have said nor add language that the legislature did not see fit to include. Chatman, 162 N.H. at 365. We interpret a statute in the context of the overall statutory scheme and not in isolation. Id.; see RSA 21:1 (2012). Our goal is to apply statutes in light of the legislature's intent in enacting them and the policy sought to be advanced by the entire statutory scheme. Chatman, 162 N.H. at 365. Further, we construe provisions of the Criminal Code according to the fair import of their terms and to promote justice. RSA 625:3 (2007). We are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. Chatman, 162 N.H. at 365.

---

[1] The defendant filed an earlier motion to amend sentence in 2010. In that motion, he asserted that he was entitled to the benefit of 2008 amendments to the sexual assault statutes. The motion was denied by the trial court. On appeal of that ruling, he argued that he was entitled to the retroactive benefit of the 2003 Amendment for the purposes of decreasing his sentence. We affirmed the trial court's ruling on January 11, 2012, declining to address his argument regarding the 2003 Amendment because he had failed to present it to the trial court.

As a general rule, a newly amended criminal statute applies to offenses committed after its enactment, but the prior statute remains applicable to all offenses committed prior to the amendment's effective date. State v. Sampson, 120 N.H. 251, 254 (1980). The Ex Post Facto Clauses of the United States and New Hampshire Constitutions prohibit both prosecution for conduct that did not constitute an offense at the time it occurred and imposition of punishment greater than that authorized by the law in effect at the time a crime was committed. See U.S. CONST. art. I, § 9, cl. 3; § 10, cl. 1; N.H. CONST. pt. I, art. 23; Holiday v. United States, 683 A.2d 61, 66 (D.C. 1996). "On the other hand, if the repealing legislation enacted more lenient sentencing options, the ex post facto clause[s] did not prohibit courts from continuing the prosecution and applying a new ameliorative sentencing scheme to pending cases." Holiday, 683 A.2d at 66; see Sekt v. Justice's Court of San Rafael Tp., 159 P.2d 17, 21 (Cal. 1945) (retroactive application of mitigating statutes "is not complicated by the prohibition against ex post facto laws, since it is well settled that beneficial legislation is not within the prohibition of the constitutional provision").

However, although there is no constitutional prohibition against the retroactive application of legislation that reduces the punishment for a previously committed crime, the common law theory of abatement by repeal remained as an obstacle to achieving this result. The theory holds that "the repeal of a criminal statute abate[s] all prosecutions which had not reached final disposition in the highest court authorized to review them." Bradley v. United States, 410 U.S. 605, 607 (1973); see People v. Oliver, 134 N.E.2d 197, 200-01 (N.Y. 1956) ("At common law, it was generally held that the repeal or amendment of a penal statute barred any further prosecution under that statute for violations committed before the repeal, and abated all pending prosecutions which had not reached final judgment." (citations omitted)); see also Sekt, 159 P.2d at 21; Holiday, 683 A.2d at 66-67. Under the common law rule, the abatement theory applied even to situations where a statute was repealed and re-enacted with reduced penalties. See Bradley, 410 U.S. at 607-08; Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U. Pa. L. Rev. 120, 125-26 (1972) (citing cases).

In the absence of a specific savings clause in the legislation that effectuates the repeal, the theory of abatement carries an obvious potential for injustice: the prospect that crimes committed before the effective date of a statutory amendment would go entirely unpunished even though (as evidenced by the terms of the new legislation applicable prospectively) the legislature quite obviously had no intention of removing the conduct at issue from the ambit of the criminal law. In response to this common law doctrine, New Hampshire was one of many states that enacted a general savings statute abrogating the common law theory of abatement. See RSA 21:38; Holiday, 683

4

A.2d at 66-67; Comment, Today's Law, supra at 127-28 & n.51. Savings clauses "'save[]' pending or future prosecutions of crimes committed under a repealed or amended statute from being abated." State v. Cummings, 386 N.W.2d 468, 470 (N.D. 1986); see also People v. Schultz, 460 N.W.2d 505, 510 (Mich. 1990); Oliver, 134 N.E.2d at 201. Under RSA 21:38, "[n]o suit or prosecution, pending at the time of the repeal of any act, for any offense committed or for the recovery of a penalty or forfeiture incurred under the act so repealed, shall be affected by such repeal."[2] Of course, the savings statute is intended only as a general rule of construction, which must give way if the legislature has unambiguously expressed an intent contrary to the statutory "default" position it establishes. See RSA 21:1 (2012) (providing that rules of construction established under RSA chapter 21 "shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the [statute under consideration]").

Before further addressing the savings statute, therefore, we consider whether there is any legislative indication that it intended the 2003 Amendment to apply retroactively. We find none. There is no dispute that, when it enacted the 2003 Amendment, the legislature did not specifically state whether it was to apply prospectively or retrospectively. In support of his argument that an intent to apply it retrospectively should be inferred, the defendant first points out that the 2003 Amendment followed at least one earlier attempt by the legislature to enact a similar amendment to the sexual assault statutes. The same legislature that enacted the 2003 Amendment also passed House Bill 278, which would have effectuated a similar change to RSA 632-A:4, except that the age difference between the victim and perpetrator could have been up to four years instead of three. That bill was vetoed by the Governor, who objected to the larger age gap. N.H.H.R. Jour. 987 (2003) (Governor's veto message on HB 278). In 2006, the legislature corrected an apparent ambiguity created by the 2003 Amendment by narrowing the scope of RSA 632-A:3, II to apply only "where the age difference between the actor and the other person is 3 years or more." Laws 2006, 162:1.[3] Then, in 2008, the legislature amended RSA 632-A:3, II and :4, I(c), increasing the age gap in both statutes to four years. Laws 2008, 334:9, :14. Although this sequence of enactments undoubtedly evidences the legislature's intent to reduce the

---

[2] The term "repeal," as it is used in RSA 21:38, has generally been construed to include both repeals and amendments. See Schultz, 460 N.W.2d at 510 n.12 ("The term 'repeal' also includes the reenactment of the same statute with modification."). The defendant does not argue to the contrary.

[3] That the 2006 legislation sought to correct an ambiguity resulting from the fact that the 2003 Amendment did not change the terms of the FSA statute, RSA 632-A:3, may support the inference that the 2006 legislation was intended to apply retroactively to offenses covered by the 2003 Amendment. It does not, however, provide any guidance on the issue of whether the 2003 Amendment itself applies prospectively or retrospectively.

5

punishment for certain sexual conduct between teenagers, nothing contained therein demonstrates a "manifest intent of the legislature," RSA 21:1, that the reduced punishment should apply to those who were charged with such conduct prior to the effective date of the 2003 Amendment. Thus, we do not find this other legislation helpful in resolving the question of the retroactive application of the 2003 Amendment.

A more significant indicator of legislative intent regarding retroactive application of the 2003 Amendment may be gleaned from its effective date. Laws 2003, chapter 316, which was enacted in July 2003, called for six of its nine substantive sections to take effect sixty days after passage. The other three substantive sections, including the one enacting the 2003 Amendment, were made effective on January 1, 2004. Laws 2003, 316:10. We find it difficult to infer legislative intent that an amendment should apply retrospectively when the legislature set an effective date for that amendment nearly six months into the future. See State v. Banks, 108 N.H. 350, 352 (1967) (finding legislature intended new burglary statute to apply prospectively where it set an effective date sixty days after passage), cf. Dorsey v. United States, 132 S. Ct. 2321, 2332-33 (2012) (finding that more lenient penalties enacted by federal Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, applied to pre-Act offenders sentenced after the Act took effect because, in part, the Act gave "Emergency Authority" to the sentencing commission to promulgate amendments to sentencing guidelines "as soon as practicable" and not later than 90 days after passage (quotations omitted)).

Since neither the 2003 Amendment nor any of the related enactments discussed above contain a definitive expression of legislative intent regarding retroactive application of the 2003 Amendment, the default rule embodied in RSA 21:38 controls. Although our savings statute has been part of our law since at least the publication of our Revised Statutes in 1842, see RS 1:27 (1842), we have never had occasion to construe the statute in the context presented here. Indeed, in at least one case where the statute would appear to have been implicated, we reached a decision without even mentioning it. In State v. Gobin, 96 N.H. 220, 223 (1950), which dealt primarily with an unrelated question on appeal, we held in the final sentence of the opinion that an amendment reducing the punishment for the defendant's crime that took effect after its commission governed sentencing in that case. The opinion did not discuss or reference RSA 21:38, but supported its holding by citing State v. Arlin, 39 N.H. 179 (1859). See Gobin, 96 N.H. at 223. Arlin, however, also did not present any issue involving the general savings statute. Instead, the issue in that case was whether a defendant, who had not yet been indicted at the time a change in the law reduced the punishment for robbery, was entitled to the procedural protections established under the statute in force at the time of the offense. Arlin, 39 N.H. at 180. The legislation effecting the amendment contained a provision that stated it did not apply to pending prosecutions. Id.

We held that, because the defendant had not been indicted when the new statute took effect, his prosecution was not pending and therefore the amended statute was applicable to his offense. Id.[4]

In State v. Banks, the defendant relied upon RSA 21:38 in arguing that the enactment of a new burglary statute subsequent to his offense but prior to his arraignment and indictment operated as a repeal of the old statute, thus preventing his prosecution. Banks, 108 N.H. at 351. We rejected the argument, reasoning that by making the repeal of the old statute and the enactment of the new one effective on the same date, the legislature had clearly indicated its intention that the old statute apply to offenses committed before the new one took effect. Id. at 352. That the new statute increased the penalties for burglary provided further support for our conclusion, as it made it unlikely that the legislature intended to "effect a legislative pardon for all crimes of burglary committed prior to the effective date of [the new statute]." Id.

In State v. Breest, 116 N.H. 734, 737 (1976), the defendant was convicted of first degree murder. At the time of the offense, the punishment for first degree murder was life imprisonment with no provision for parole. Breest, 116 N.H. at 754. Before sentencing, the legislature made two amendments to the Criminal Code: the first provided that a prisoner serving a life sentence would be eligible for parole after serving eighteen years; the second created an exception from the first amendment for prisoners convicted of first degree murder of a psycho-sexual nature, instead making them eligible for parole after serving forty years. Id. at 753. Although we held that the defendant could be sentenced under the amended statute in effect at the time of sentencing, the only issue we addressed in reaching this decision was the defendant's claim that the amended statute imposed a harsher penalty than the statute in force before the second amendment to the Code. Id. at 754-55. We rejected this argument, holding that by establishing parole eligibility not available to the defendant at the time of the commission of the crime, the amendment mitigated the punishment for murder, and therefore application of the amended statute was not constitutionally prohibited. Id. Because the State apparently acquiesced in the defendant being sentenced under the amended statute, we had no occasion in Breest to discuss or consider the applicability of RSA 21:38. Id.

Finally, in Sampson, we addressed whether the defendant should receive the benefit of a post-offense amendment of the theft statute that raised the threshold value of stolen goods necessary to make the offense a felony.

---

[4] From all that appears in the opinion, the defendant in Arlin did not argue that he was entitled to escape liability completely based upon the criminal abatement theory, and the State did not contend that the defendant was subject to punishment under the pre-existing statute.

Sampson, 120 N.H. at 253-54. The defendant urged that because the amendment took effect before he was indicted and had the effect of reducing his crimes to misdemeanors, the charges should be dismissed because the indictments were not brought within the one-year statute of limitations applicable to misdemeanor-level offenses. See RSA 625:8, I(c) (1996); Sampson, 120 N.H. at 253-54. We specifically rejected the defendant's argument that he was entitled to the benefit of the legislature's post-offense reclassification of his crimes to misdemeanors. Sampson, 120 N.H. at 254. Although recognizing that the purpose of the amendment was to alter the seriousness of punishments to account for the decreased value of the dollar over time, we discerned from this no indication that the legislature intended the statute to apply retroactively. Id. Citing RSA 21:38, we noted that if the defendant's position were adopted, he would receive not merely a reduction in potential punishments, but rather a complete avoidance of prosecution, a result the legislature surely did not intend. Id. at 254-55. Consequently, because the defendant's offenses occurred at a time when theft of goods of the value he allegedly stole was classified as a felony, we held that he was subject to prosecution under the pre-amendment statute. Id. at 255.

Other jurisdictions that also have general savings statutes are split on the question of whether their statutes permit giving retroactive effect to amendments that reduce the penalty for crimes committed before the amendments take effect. Although the terms of general savings statutes vary, courts construing such statutes generally adopt one of two approaches. Under one view, many state courts have held that general savings statutes do not preclude retroactive application of penalty-reducing sentencing amendments. See Holiday, 683 A.2d at 67-70 (surveying case law across jurisdictions). The prevailing reasoning among these courts imputes a general legislative intent that all ameliorative sentencing amendments are to apply retrospectively in any case to which they could constitutionally apply. See, e.g., In re Estrada, 408 P.2d 948, 951 (Cal. 1966) ("When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper . . ." so it is an "inevitable inference that the Legislature must have intended that the new statute . . . should apply to every case to which it constitutionally could apply."); Lewandowski v. State, 389 N.E.2d 706, 707 (Ind. 1979) (approving view that "the enactment of [an] ameliorative sentencing amendment was, in itself, a sufficient indication of the legislative intent that it be applied to all to whom such application would be possible and constitutional, thereby obviating application of the general savings statute"); Schultz, 460 N.W.2d at 511 (adopting similar reasoning); Oliver, 134 N.E.2d at 202 (same).

A second group of jurisdictions, including the federal courts, have adopted a more literal interpretation of their savings statutes. See Warden v. Marrero, 417 U.S. 653, 663-64 (1974) (holding that repealed no-parole

8

provision applied based upon general savings statute); <u>Holiday</u>, 683 A.2d at 74 (following federal courts' construction of federal savings statute as applied to ameliorative amendment of mandatory minimum sentence statute); <u>State v. Alley</u>, 263 A.2d 66, 69 (Me. 1970) (holding general savings statute precluded retroactive application of statutory change reducing penalty for possession of marijuana from felony to misdemeanor); <u>Com. v Dotson</u>, 966 N.E.2d 811, 814-15 (Mass. 2012) (interpreting general savings statute to bar retroactive application of statute reducing penalty for first offense disorderly conduct); cf. <u>Dorsey</u>, 132 S. Ct. at 2331-35 (applying Fair Sentencing Act retrospectively to pending prosecutions only upon finding of legislative intent that it be so applied).

We are persuaded by the reasoning of the second group of jurisdictions. As explained in <u>Holiday</u>, cases such as <u>Oliver</u> and <u>Estrada</u>, which hold that ameliorative sentencing statutes should be applied retroactively, have tended to pay scant heed to the specific terms of the savings statutes at issue and/or have failed to take account of the specific purpose for which such statutes are enacted:  to provide a default rule for cases in which the legislature has not <u>clearly</u> articulated its intent as to retroactivity.  See <u>Holiday</u>, 683 A.2d at 67-70 (analyzing these cases).  To adopt the reasoning of cases like <u>Oliver</u> and <u>Estrada</u> would require us to read into the plain terms of RSA 21:38 an exception to the default rule of non-retroactivity that does not appear in the text of the statute – in effect, adding the words, "<u>unless such repeal would reduce a defendant's sentence</u>."  To do so would be contrary to long-standing precedent that prohibits us from adding language to a statute that the legislature did not see fit to include.  <u>Chatman</u>, 162 N.H. at 365.

The implications of such retrospective application reinforce our determination not to adopt it.  For instance, if, rather than reducing the penalty for consensual sexual penetration between teenagers prior to the defendant's conviction becoming final, the legislature had instead followed Massachusetts by lowering the age of consent to fourteen[5] (which would essentially reduce to zero the punishment for consensual sexual penetration between teenagers), the conduct of the defendant at issue would have become entirely lawful.  Yet in the absence of a clear legislative statement or other manifest evidence of legislative intent that such an amendment apply retroactively, the language of our savings statute, on its face, would in this hypothetical case call for the continued prosecution of the defendant for the offense proscribed by the law in effect at the time he acted.  See RSA 21:38 ("No suit or prosecution, pending at the time of the repeal of any act, . . . shall be affected by such repeal.").  Applying the logic from cases such as <u>Oliver</u> and

---

[5] See <u>Com. v. Shore</u>, 840 N.E.2d 1010, 1011 (Mass. App. Ct. 2006) (noting that lack of consent is an element of the offense of indecent assault against a child over the age of fourteen in violation of Mass. Gen. Laws ch. 265, § 13H (2008)).

9

Estrada to this hypothetical case, however, would read into such an amendment an implied legislative intent that it should apply retroactively. We cannot square such a result with the plain language of our savings statute.

Moreover, to the extent that courts taking this view may differentiate between full repeals of criminal statutes and ameliorative sentencing amendments that reduce, but do not eliminate, criminal penalties, see Oliver, 134 N.E.2d at 202 n.3 (observing that a change in the law abolishing a crime or changing its definition may not support an inference favoring retroactive application because "the State may prefer to retain the right to prosecute for the act previously committed in deliberate defiance of the law as it then existed"), such differentiation would potentially create illogical outcomes. To apply ameliorative sentencing amendments retroactively while applying full repeals only prospectively would deny criminal defendants the benefit of the legislature's full step of decriminalizing conduct – i.e., reducing the penalty to zero – while giving them the benefit of the half step of reducing the existing penalty. This would be unjust and illogical. See State v. Farrow, 140 N.H. 473, 476 (1995) ("This court will avoid construing statutes in a manner that would produce an unjust and seemingly illogical result." (quotation omitted)).

Furthermore, even if we were inclined to adopt the Oliver/Estrada reasoning, it would not apply here. The 2003 Amendment does not simply reduce the penalty for a pre-existing crime. Rather, it effectively eliminates the crime of pattern sexual assault of which the defendant was convicted. See State v. Sleeper, 150 N.H. 725, 728 (2004) (holding that "the pattern itself" is an element of the crime of pattern AFSA). Thus, despite the defendant's suggestion that if we apply the 2003 Amendment retroactively he can simply be resentenced for a misdemeanor violation of RSA 632-A:4, that obviously is not the case. In order for the defendant to receive the benefit of the 2003 Amendment, he would need to be sentenced under the misdemeanor sexual assault statute even though the crime for which he was indicted, tried, and convicted was pattern aggravated felonious sexual assault.

The defendant was charged with and convicted of engaging in a pattern of sexual assaults, which means that he must have committed more than one such assault against the same victim within the one-year time frame alleged in the indictment. See RSA 632-A:1, I-c. The record before us suggests that the pattern of conduct occurred weekly over the course of a year, but as the State argued in the trial court, at a minimum there were at least two discrete assaults. Hence, we could not simply remand to the trial court for imposition of a sentence for a single misdemeanor offense, even assuming that the court had the authority to impose sentence for that crime.

Moreover, under the pattern AFSA statute, "the essential culpable act, the actus reus, is the pattern itself, that is, the occurrence of more than one

sexual assault over a period of time, and not the specific assaults comprising the pattern." State v. Hannon, 151 N.H. 708, 714 (2005) (quotation omitted). The jury in this case need not have been unanimous on the underlying acts comprising the pattern offense, but need only have unanimously agreed that the defendant perpetrated more than one act of sexual assault as described in RSA 632-A:2 and :3, during the statutory time period. Id. Because there is no way of knowing how many discrete assaults the jury found to exist when returning a guilty verdict on the pattern charge – and in fact, the jury need not have agreed on how many discrete assaults occurred or that any particular assault in fact occurred – the trial court would be unable to determine sentences for multiple uncharged individual assaults.

In sum, for the reasons stated above, we hold that the defendant is not entitled to the retrospective application of the 2003 Amendment to his sentence for pattern AFSA. Although our ruling achieves the result that we believe to be mandated by the savings statute, we emphasize that it is for the legislature to determine whether a statute that reduces the penalty for an offense is to apply prospectively or retrospectively. We urge the legislature, in the future, to avoid any uncertainty by clearly stating its intentions on this point when it considers legislation dealing with sentencing.

III

The defendant also argues that the United States and New Hampshire Constitutions require retroactive application of the 2003 Amendment to his case. He invokes the following constitutional provisions in support of this argument: (1) the prohibition against cruel or unusual punishments found in the Eighth Amendment to the United States Constitution and Part I, Article 33 of the New Hampshire Constitution; (2) the guarantee of due process contained in the Fifth and Fourteenth Amendments to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution; and (3) the Proportionality Clause of Part I, Article 18 of the New Hampshire Constitution. Based solely upon the 2003 Amendment, which makes sexual penetration between teenagers punishable as a class A misdemeanor that carries a sentence of no more than one year of imprisonment, the defendant asserts that his sentence of 3 1/2 to 20 years for that same conduct is cruel and unusual and grossly disproportionate in violation of the foregoing constitutional protections. We find no merit in this argument.

Where, as here, the defendant asserts that his constitutional rights have been violated as a result of the trial court's sentencing decision, we review that decision de novo. State v. Burgess, 156 N.H. 746, 752 (2008). We first address the defendant's claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). We must presume that the sentencing scheme is constitutional and we cannot declare it

unconstitutional except upon inescapable grounds.  State v. Bird, 161 N.H. 31, 40 (2010).  For a sentence to violate the New Hampshire Constitution, it must be grossly disproportionate to the crime.  State v. Enderson, 148 N.H. 252, 259 (2002).

The defendant does not argue that his sentence was cruel, unusual, or disproportionate under the law as it existed at the time of his conviction and sentencing.  Rather, he argues that his sentence was thereafter rendered disproportionate by virtue of the legislature's later amendment of the penalty applicable to his conduct.

To adopt the defendant's argument would essentially require us to hold that when the legislature reduces the penalty for certain criminal conduct, at least all sentences imposed pursuant to the original statute which have not yet become final and which exceed what is authorized by the amendment are per se unconstitutional.  Courts have uniformly rejected claims to this effect.  See Dorsey, 132 S. Ct. at 2344 (holding that "[t]here is no constitutional doubt triggered by the application" of mandatory minimums later amended by ameliorative statute); Marrero, 417 U.S. at 664 (holding that "Congress trespassed no constitutional limits" in amending parole eligibility prospectively); Thompson v. Missouri Bd. of Parole, 929 F.2d 396, 400-01 (8th Cir. 1991) (holding that state's decision to maintain parole system for defendants convicted prior to amendment was not irrational or invidiously discriminatory); United States ex rel. Hayden v. Zelker, 506 F.2d 1228, 1229-30 (2d Cir. 1974) (holding that punishment of persons convicted before amendment under old law pursuant to a savings clause did not constitute unconstitutional discrimination).

In support of his position, the defendant relies upon Griffith v. Kentucky, 479 U.S. 314 (1987), but we find that case inapposite.  Griffith deals with the retroactive application of new rules of constitutional criminal procedure, not the retroactive application of statutory amendments.  Griffith, 479 U.S. at 322 ("[F]ailure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." (emphasis added)).  The "application of new statutes to pending cases is quite a different situation" than that to which the Griffith rationale applies, United States v. Santana, 761 F. Supp. 2d 131, 163 (S.D.N.Y. 2011), and courts also have uniformly rejected the proposition that Griffith imposes a constitutional requirement that ameliorative sentencing amendments must be given retroactive effect, id.; see United States v. Finley, 487 Fed. Appx. 260, 266-67 (6th Cir. 2012), United States v. Acoff, 634 F.3d 200, 202 (2d Cir. 2011) ("It is not irrational for Congress to impose a penalty on those who committed their offenses at a time when they knew or should have known the severity of the applicable penalty, even while reducing the penalty as to future offenders."), abrogated on other grounds by Dorsey v. United States, 132 S. Ct. 2321 (2012).

We agree with the reasoning of these cases, and hold that none of the provisions of the State Constitution on which the defendant relies requires that he be given the benefit of the 2003 Amendment.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances.  <u>Dorsey</u>, 132 S. Ct. at 2344; <u>Enderson</u>, 148 N.H. at 259.  Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY and BASSETT, JJ., concurred.