Sullivan, }
Nov. 8, 1916. }

MARGARET KERBY & a., Ex'rs, v. CHARLESTOWN.

MARGARET KERBY & a., Ex'rs, Ap'ts, v. STATE.

A person does not acquire a new residence merely by going to another place with the intention of making it his domicile but he must also go there with the further intention of residing there for a more or less definite time and making it his home.

The right of appeal to the superior court for an abatement of taxes is not lost where failure to comply with the requirement for the filing of an inventory is due to mistake.

(1) PETITION, for an abatement of the tax assessed against Catherine Paris, the plaintiffs' testatrix, by the town of Charlestown in 1914.

(2) PROBATE APPEAL, from a decree of the probate court of Sullivan county dismissing the plaintiffs' petition for leave to file a copy of her will.

The court found that Mrs. Paris, who had resided in Charlestown for many years, neglected to comply with the provisions of P. S., c. 57 in 1912 and was doomed. The same thing happened in 1913, and she decided to acquire a residence in New York City where she had resided before coming to Charlestown. In pursuance of this determination she went to New York some time in September, 1913, and stopped at the Manhattan Hotel where she was accustomed to stay when in that city. About October 31 she consulted an attorney and in pursuance of his advice did the various acts on which the plaintiffs rely to sustain the court's findings that she was a resident of New York on April 1 and May 2, 1914. After doing these things she stayed at the hotel for a few days, then went to Stockbridge, Mass., and thence to Boston where she stayed until about the first of December. She then returned to New York where she remained a few days and then returned to Charlestown and stayed until some time in April; when she again went to New York where she stayed for some three weeks. She was then taken sick, started for Charlestown but died in Boston on May 2, 1914. The court found that Mrs. Paris' money at interest was of the value of $157,394.30 but that it was not taxable in Charlestown and the town excepted. The court found that the amount of her other taxable property in Charlestown, April 1, 1914, was $27,100, and

that justice did not require an abatement as to this valuation. The court sustained the plaintiffs' appeal from the decree of the probate court and the state excepted. Other facts are stated in the opinion.

Transferred by *Chamberlin*, J. from the April term, 1915, of the superior court.

*Streeter, Demond, Woodworth and Sulloway (Mr. Woodworth* orally), for the plaintiffs:

The evidence clearly warrants the conclusion of the trial court that Mrs. Paris was domiciled in New York on April 1 and May 2, 1914: *Gilbert* v. *David*, 235 U. S. 561; *Ringgold* v. *Barley,* 5 Md. 186; *Helm's Trustee* v. *Commonwealth*, 135 Ky. 392; *Gardiner* v. *Brookline*, 181 Mass. 162, 165; *Barron* v. *Boston*, 187 Mass. 168, 170.

*Jones, Warren, Wilson and Manning (Mr. Warren and Mr. Manning* orally), for Charlestown:

A domicile having been once acquired, continues until a new one is actually acquired *animo et facto* and the burden of proof rests upon the plaintiffs to show a change of domicile,— or more accurately stated,— to show that Mrs. Paris acquired a new domicile: *Watkinson* v. *Watkinson*, 68 N. J. Eq. 632, 638; *Harvard College* v. *Gore*, 5 Pick. 370, 375; *Pickering* v. *Cambridge*, 144 Mass. 244, 245; *Anderson* v. *Watt*, 138 U. S. 694; *Ayer* v. *Weeks*, 65 N. H. 248, 249; *Smith* v. *Croom*, 7 Fla. 81; *Channel* v. *Capen*, 46 Ill. App. 234.

*James P. Tuttle*, attorney-general, and *Joseph S. Matthews*, assistant attorney-general (by brief and orally), for the state:

The place of residence may be separated for a time from the domicile when a man for purposes of business or pleasure resides from home; but the domicile cannot be separated from the home: *Preston* v. *Fidelity Trust Co.*, 94 Ky. 295; *Plant* v. *Harrison*, 74 N. Y. Supp. 411; *In re Norton*, 159 N. Y. Supp. 619; *Putnam* v. *Johnson*, 10 Mass. 487; *Matter of Dimock*, 11 N. Y. Misc. 610,— 32 N. Y. Supp. 927; *Shattuck* v. *Maynard*, 3 N. H. 123; 14 Cyc. 833, 834, 835, 851, 853; *Hartford* v. *Champion*, 58 Conn. 268, 275; *Littlefield* v. *Brooks*, 50 Me. 475, 477; *Harral* v. *Harral*, 39 N. J. Eq. 279, 285; *Cruger* v. *Phelps*, 21 N. Y. Misc. 252, 262,— 47 N. Y. Supp. 61; *Holliman* v. *Peebles*, 1 Tex. 673, 688; *Salem* v. *Lyme*, 29 Conn. 74–79; *Wayne* v. *Greene*, 21 Me. 357; *Warren* v. *Thomaston*, 43 Me. 406; *Hallet* v. *Bassett*, 100 Mass. 167; *Sears* v. *Boston*, 1 Met. 250; *Jennison* v. *Hapgood*, 10 Pick. 77; *Atherton* v. *Thornton*, 8 N. H. 178; *State*

v. *Palmer,* 65 N. H. 9; *Still* v. *Woodville,* 38 Miss. 646; *Walker* v. *Walker,* 1 Mo. App. 404; *Moore* v. *Wilkins,* 10 N. H. 452; *State* v. *Daniels,* 44 N. H. 383; *Hallowell* v. *Saco,* 5 Greenleaf (Me.) 145; *Chaine* v. *Wilson,* 1 Bosw. (N. Y.) 673; *Bump* v. *Smith,* 11 N. H. 48; *Gilman* v. *Gilman,* 52 Me. 165; *Shaw* v. *Shaw,* 98 Mass. 158; *Holmes* v. *Green,* 7 Gray 299; *Morris* v. *Gilmer,* 129 U. S. 315; *Lyman* v. *Fiske,* 17 Pick. 231; *Cabot* v. *Boston,* 12 Cush. 52; *Kilburn* v. *Bennett,* 3 Met. 199; *Mead* v. *Boxborough,* 11 Cush. 362; *Bulkley* v. *Williamstown,* 3 Gray 493; *Greene* v. *Windham,* 13 Me. 225; *Black* v. *Black,* 4 Bradf. Sur. (N. Y.) 174.

YOUNG, J.    Whether the plaintiffs should be permitted to file a copy of Mrs. Paris' will depends on where she resided at the time of her death.    P. S., *c.* 187, *s.* 13.    The court has found that she resided in New York; consequently the only question raised by the state's exception is whether the evidence warrants that finding. The plaintiffs rely on the fact that Mrs. Paris went to New York in the fall of 1913 to acquire a domicile in that city and after consulting an attorney as to what she must do to effectuate her purpose, registered at the Manhattan Hotel as of New York City, hired a room by the year, changed the address on her trunk from Charlestown, N. H., to New York City, removed her securities from Manchester, N. H., to New York, made a will in which she set herself up as of New York City and from that time on claimed to be a resident of that city.    This evidence sustains the court's finding that Mrs. Paris honestly believed she was a resident of New York; but it will be necessary to consider it in connection with the other findings to determine whether it is sufficient to sustain the finding that she was such a resident on either April 1 or May 2, 1914.    A person does not acquire a new residence by merely going to another town with the intention of making it his domicile.    He must not only go there with that intention but also with the intention of residing there for a more or less definite time and making it his home.    *Leach* v. *Pillsbury,* 15 N. H. 137, 138; *Hart* v. *Lindsey,* 17 N. H. 235, 243; *Concord* v. *Rumney,* 45 N. H. 423, 427; *Foss* v. *Foss,* 58 N. H. 283; *Bartlett* v. *New Boston,* 77 N. H. 476.    By home as that word is used in the law of domicile is intended what every one has in mind when he thinks of home,—his principal residence, the place to which he always intends to return, or the one place he thinks of as home.    *Hart* v. *Lindsey, supra.*    While it is common knowledge, as the plaintiffs contend, that many persons reside in different places parts of each

year, that is not this case, for in so far as actual residence is concerned the evidence shows that Mrs. Paris actually resided in Charlestown for the last thirty or forty years of her life. In other words the evidence shows that the only house, or for that matter, room, Mrs. Paris actually occupied for more than a few weeks at a time during the last years of her life was in Charlestown. The question, therefore, is not which of two places in which she actually resided parts of the year was her home but whether it can be found that she intended when she went to New York in the fall of 1913 to reside in that city and make it her home. Consequently the evidence as to what she said and did while she was in New York in the fall of 1913 must be considered in connection with the evidence as to how and where she in fact resided both before and after that visit to New York. The question, therefore, of whether it can be found that Mrs. Paris was a resident of New York in 1914 resolves itself into one of whether it can be found that when she went to New York in 1913 she intended actually to reside there and make that city her home within the meaning of home as that term is used in the law of domicile.

The fact she hired a habitable room at the Manhattan Hotel would have some tendency to sustain the court's conclusion if it were not for the further finding that she never intended to occupy it; for the right to occupy this room carried with it all the rights incident to living in a first class hotel,—that is rights in the parlors, toilet rooms, dining rooms and elevators and to the services of the employees of the hotel. The inference favorable to the plaintiffs that might be drawn from the finding that the room Mrs. Paris hired was in every way habitable is, however, negatived by the findings that she never occupied this room, never even saw it, that it was not such a room as she ever had occupied or ever intended to occupy, that it was located in a part of the hotel usually occupied by men, and that "she knew that she could always have other and more elaborately furnished and more conveniently located rooms for herself and companion when stopping in the Manhattan Hotel." These findings not only negative any inference favorable to the plaintiffs that can be drawn from the fact Mrs. Paris hired a habitable room, but also their contention that she hired this room in order to be sure of a place in which to stay if she returned to the city when all the rooms in the hotel were occupied. The only inference that can fairly be drawn from the finding in respect to Mrs. Paris' knowledge is that it never occurred to her when she hired

this room that there would ever be a time when it would be neces-
sary for her to occupy it, for the court finds in terms that she knew
when she hired it that she could always have other and better rooms
when she wished to stop at the hotel.

The only legitimate conclusion, therefore, that can be drawn from
these findings as a whole is that Mrs. Paris hired the room at the
hotel because she was advised that she must have some place in
New York that she could call her home if she wished to acquire a
New York domicile, and not because she had any thought of actu-
ally residing either in this room or in the Manhattan Hotel and
making the hotel her home. Most of the other facts on which the
plaintiffs rely to sustain the court's findings are colorless in and of
themselves in so far as the question of Mrs. Paris' intention to reside
in New York City and make it her home is concerned. In fact
most of them tend rather to the conclusion that she thought the
doing of the things she is shown to have done was all that was nec-
essary to acquire a New York domicile, or, that if she did these
things, she could live just as she had been living for the last thirty
years, than to the one that she went to New York in the fall of 1913
with the intention of actually residing in that city and making it
her home; for if that had been her intention,—that is if she had
intended actually to remain in that city,—it is incredible that her
attorney would have advised her to hire a room she never intended
to occupy or to change her will for the purpose of setting herself up
as of New York or to go back to the hotel and change her registra-
tion from Charlestown, N. H., to New York City; for the only
possible reason there could be for doing any of these things was to
give notice to everyone that she was a citizen of New York, and it
is obvious that if she had intended to reside in that city, giving that
notice was an idle ceremony. These facts therefore tend to the
conclusion that she had no intention of actually residing in New
York. The fact she changed her address on her trunk also tends
to the conclusion that she did the things she is shown to have done
because she was advised that they were the things to do and not
because she thought of actually residing in New York and making
it her home; for the purpose that ordinarily induces a person to put
his name and address on his trunk is to enable the transportation
companies to forward it to him if it goes astray. It is obvious how-
ever that that could not have been Mrs. Paris' purpose in making
this change for the evidence all tends to the conclusion that she
intended to reside in Charlestown even though her domicile was in
New York.

The only conclusion therefore is that she made this change in order to announce to the world that she was a resident of New York, or that she made it because she was advised that that was the thing to do.

In short, none of the facts on which the plaintiffs rely can fairly be said to sustain the court's finding that Mrs. Paris was a resident of New York either on April 1 or May 2, 1914, for all fair minded men must agree that the mere fact she transferred her securities from Manchester to New York is not sufficient for that purpose and that is the only thing she is shown to have done that is more consistent with the theory she intended to reside in New York and make it her home than with the one that she intended to reside in Charlestown just as she had been doing for the previous thirty years. And the inference favorable to the plaintiffs that may be drawn from this fact is to some extent neutralized by the fact she retained her box in the vault of the Charlestown National Bank.

In other words, all fair minded men must agree that it cannot be found Mrs. Paris went to New York in the fall of 1913 intending to reside in that city and make it her home from the fact she transferred her securities to that city and called it her home, when all the other evidence in the case tends to the conclusion that she intended to reside in Charlestown just as she had been doing for the greater part of her life. In fact she made no changes in her mode of living except to call New York her home. She did not stop in New York any more or in any different way after the fall of 1913 than she had been doing in the past. She had no place in that city that she ever expected to occupy; but continued to occupy her Charlestown home and maintained it in exactly the same way she had been doing for many years. In short, if it had not been for the fact she said New York was her home no one would ever have thought she had changed her residence to that city, for she was in the habit of going to New York, Stockbridge and Boston just as she did in the fall of 1913 and then returning to Charlestown or going South for the winter. That was also true of her visit to New York in April, 1914; and when she was taken sick instead of staying in New York, as she certainly would have done if she had thought of that city as her home, she started for Charlestown and died on the way. The conclusion, when all these facts are considered, is irresistible that when Mrs. Paris went to New York in the fall of 1913 she intended to return to Charlestown, just as soon as she had done the things she was advised that it was necessary for her

to do to acquire a New York domicile, and reside there just as she had been doing for many years.

In other words, the only conclusion that can fairly be drawn from the facts on which the plaintiffs rely is that there never was a minute in the last year of Mrs. Paris' life when she did not think of Charlestown as her home within the meaning of that term as it is used in the law of domicile; and the evidence on which the defendants rely all tends to strengthen this conclusion. Notwithstanding Mrs. Paris' house in Charlestown was comfortably furnished for a person in her station in life, she took nothing with her on either of her visits to New York other than she would have taken if she had gone to any other city for a few weeks' visit, or nothing more than she had been accustomed to take in her previous visits to that city. In fact, although the court has found that Mrs. Paris went to New York in 1913 in order to acquire a domicile in that city, it has also found that she did not move any of the furnishings of her Charlestown house to that city,—that is not one of the many things that made her house in Charlestown her home or the place which she always thought of as home. It is simply incredible that she would have left all these things in Charlestown if she had really made up her mind to abandon that town as her home and such an intention was a condition precedent to acquiring a domicile in New York.

In other words, all fair minded men will agree that if Mrs. Paris had intended to make a home for herself in New York she would have moved a part at least of the furnishings of her Charlestown house to her new home, even if she intended to make her home in a hotel; and the facts she left all these things in Charlestown, retained all her employees and during the time she was away kept the house in readiness for immediate occupancy tend irresistibly to the conclusion that she never intended actually to reside in New York and make it her home; and that must have been her intention if she was to acquire a new domicile, for a man's home is where he makes it, not where he would like to have it.

Since Mrs. Paris was a resident of Charlestown on April 1, 1914, she was liable to be taxed not only for her tangible property but also for her money at interest. The town however contends that the plaintiffs must pay the whole tax assessed against Mrs. Paris because she failed to comply with the provisions of P. S., c. 57; but as the court has found that her failure was due to a mistake the plaintiffs can maintain this proceeding; *Parsons* v. *Durham*, 70 N. H. 44; *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 200; all of

the tax assessed against Mrs. Paris in 1914 except the tax on $184,494.30 is abated.

*Town's exception sustained in part: state's exception sustained: appeal dismissed: decree of the probate court affirmed.*

All concurred.