Coös,
June 3, 1947. } No. 3653.

WILLIAM T. McGEE *v.* FRED BRAGG *& a.*

350

*Matthew J. Ryan* and *John L. Blais* (*Mr. Blais* orally), for the plaintiff.

*Hinkley & Hinkley* (*Mr. Irving A. Hinkley* orally), for the defendants.

KENISON, J. By statute and under our constitution an inhabitant

has a right "to vote in the town in which he dwells and has his home." N. H. Const. *Pt.* II, *art.* 30; R. L., *c.* 31, *s.* 1 and, with exceptions not material in this case, a six months' residence prior to the day of voting is required. R. L., *c.* 31, *s.* 8; Laws 1943, *c.* 187. It is also provided that a voting residence is not lost by a temporary absence: "10. TEMPORARY ABSENCE. A residence acquired by any person in any town shall not be interrupted or lost by a temporary absence therefrom, with the intention of returning thereto as his home. No person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States, nor while engaged in the navigation of the waters of the United States or of the high seas, nor while a student of any seminary of learning, nor while confined in any public prison or other penal institution." R. L., *c.* 31, *s.* 10, as amended by Laws 1943, *c.* 183.

To the supervisors of the check-list is committed the responsibility of determining those qualified to vote in a town or ward. R. L., *c.* 32. Formerly the determination of the supervisors was final and, although an intentional omission from the check-list could be penalized by a fine (R. L., *c.* 32, *s.* 12), the person deprived of his right to vote was without any effective remedy. "The plaintiff's name being intentionally omitted from the check-list, he had no right to vote. P. L., *c.* 24, *s.* 16. The administrative decision of the supervisors that he was not qualified was final. No legislation authorizes an appeal to the courts." *Atwood* v. *Berry*, 87 N. H. 331, 333.

This was remedied by the Legislature by Laws 1943, *c.* 11 authorizing the Superior Court to grant "an immediate hearing" in any case where it was claimed that a name should or should not be on the check-list. Any justice of the Superior Court was given the power to order the name of a voter "to be added or removed from the check-list as justice requires, and his decision shall be final on questions of fact as in equity cases." The present proceeding was brought under this amendment.

At the outset it will be observed that the extent of review by this court is limited since the determination of one's domicile or home or voting residence involves questions of fact as to the person's intention as well as his physical presence and acts in relation thereto. "Whether or not a new domicile has been acquired is primarily a question of fact under all the circumstances of the particular case." *Bailey* v. *Bailey*, 93 N. H. 259, 261. "The determination of a domicile of choice involves the determination of questions of fact and particularly the fact of intention, always a difficult fact to determine." 1 Beale,

Conflict of Laws, *s.* 15.1. "None of the physical facts bearing upon the [right to vote] being in controversy, the mental fact of intention was necessarily the sole issue for the jury to determine." *State* v. *Palmer*, 65 N. H. 9, 10. Where the right to vote in a town involves "a temporary absence therefrom," it is a question of fact for the Presiding Justice whether the voter has the requisite "intention of returning thereto as his home," under the statute. R. L., *c.* 31, *s.* 10, as amended. An assertion by a party that he regards a certain town as his home is entitled to great weight on the issue of his intention but it must be weighed against his actions; it is not conclusive and the Presiding Justice is not obliged to believe it. See, *Beasley* v. *Beasley*, 93 N. H. 447, 448.

There may be cases where the decision would be erroneous as a matter of law. A determination that a Senator or his secretary lost his voting residence in this state merely because most of his time was spent in Washington in his official duties is such an example. "It has generally been considered that persons appointed to public office under the authority of the United States, and taking up their residence in Washington for the purpose of executing the duties of such office, do not thereby, while engaged in the service of the government, lose their domicile in the place where they before resided, unless they intend on removing there to make Washington their permanent residence." *Atherton* v. *Thornton*, 8 N. H. 178, 180, quoted with approval in *District of Columbia* v. *Murphy*, 314 U. S. 441, 453. In the instant case there is no decision which is erroneous as a matter of law.

Counsel for the plaintiff correctly concedes that Bragg had a voting residence in Carroll prior to his induction in the Army and that by force of the statute (R. L., *c.* 31, *s.* 10), quoted *supra*, retained it during the whole period of his active service. After he was placed on inactive duty he stayed two weeks in Carroll and then commenced work as an automobile-parts man in Pittsfield, Maine, as a veteran availing himself of on-the-job training under the Federal statute. He resided with his family in Pittsfield which is the home of his wife's parents. Considering the present housing conditions and the fact that on-the-job training is not necessarily available at home, there is some force to the argument that living with or near ones in-laws to receive training while earning a living is a temporary absence. On the basis of the cold printed record this would be a reasonable finding but the Presiding Justice, who observed the witnesses and heard all the evidence, found that Bragg "does not have any definite intention of returning to Carroll as his home." This is a question of

fact and we cannot say as a matter of law that there is no evidence to support it. The suggestion that Bragg's training makes him "a student of any seminary of learning" within the statute defining temporary absence cannot be accepted.

The Whitcombs owned a home in Carroll which they visited frequently during the four years they were residing in Bethlehem and which they refused to sell or rent. They had voted, paid taxes and held elective office in Carroll and nowhere else. Here again are factors from which it could reasonably be found that Carroll was their home and voting residence but in view of the fact that they did not pay tuition for their children as non-residents in Bethlehem, that he was postmaster there and had a "year-round job" in Bethlehem, we cannot say that finding of the court is without any support on the evidence. *Felker* v. *Henderson*, 78 N. H. 509; Kennan, Residence & Domicile, s. 492; 1 Beale, Conflict of Laws, s. 15.1.

The statutes regulating voting indicate that in the absence of fraud the benefit of doubt shall be exercised in favor of the right to vote in that town or ward which a person regards as his home. The decision of the Superior Court is final as to the question of temporary absence except in the limited cases where it may be erroneous as a matter of law. In this case, therefore, the order is

*Exceptions overruled.*

All concurred.