Carroll
No. 83-156

GEORGE J. EVERY

v.

SUPERVISORS OF THE MADISON CHECKLIST

April 19, 1984

*Shaines, Madrigan & McEachern,* of Portsmouth (*Donald E. Mitchell* on the brief and orally), for the plaintiff.

*Cooper, Fauver & Deans,* of North Conway (*Randall F. Cooper* on the brief and orally), for the defendants.

BROCK, J.  The defendant supervisors brought this appeal from an order of the Superior Court (*Temple,* J.). The order, issued pursuant to RSA 654:42 (Supp. 1983), required them to add the plain-

tiff's name to the official checklist of voters for the town of Madison. The issue before us is whether the presiding justice erred as a matter of law in finding that the plaintiff was "domiciled" in Madison, as that term is used in RSA 654:1 (Supp. 1983). We find no error and affirm.

The basic facts are not in dispute. George Every has been employed for approximately twenty years as a teacher in the public schools of Boston, Massachusetts. He is obliged to teach for 140 days each year. He rents an apartment in Cambridge, Massachusetts, where he and his wife reside for roughly 140 days per year.

Mr. Every purchased land in Madison in 1965, constructed a residence there in 1969–70, and made improvements on that residence in 1977. It is now a four-bedroom house. For the last few years, Mr. Every has spent approximately 220 days a year in Madison. This includes almost every weekend, three months in the summer, all other school vacations and holidays, and "personal days" allotted to Mr. Every by his employer.

Mr. Every and his family attend church near Madison, and participate extensively in sports activities—mainly skiing and motorcycling—in New Hampshire and Maine. Mr. Every runs a small mail-order business using his Madison residence as a mailing address. He is also an active member of an association of property owners in Eidelweiss, the village district (formerly a recreational subdivision) where his Madison house is located. The purpose of the association is to represent the district's interests before various local governmental bodies.

Mr. Every has one son, Vincent, by his present wife, as well as four grown children from an earlier marriage. Until 1982, Vincent attended public schools in Cambridge. In 1982, when Vincent turned fourteen, he was accepted for admission at the New Hampton School, a private boarding school in New Hampton, New Hampshire, about thirty miles from Madison. He has attended that school since September 1982. He spends all of his vacations and most of his weekends in Madison.

Mr. Every does not dispute that until 1982 he was domiciled, for voting and all other purposes, in Cambridge. He testified, however, that the change in the location of his son's school, added to all his ongoing activities mentioned above, led him in 1982 to consider Madison as his domicile, although the amount of time he spent in Madison did not increase substantially.

In August 1982, Mr. Every attempted to register to vote in Madison and was refused. He then filed a complaint with the superior court pursuant to RSA 654:42 (Supp. 1983). The court found that the initial refusal by the defendant supervisors was justified because

Mr. Every had supplied them with insufficient information. Nevertheless, the court ordered Mr. Every's name added to the Madison checklist because the evidence introduced at trial showed that he was, in fact, domiciled in Madison. The supervisors brought this appeal, arguing that the latter finding was incorrect as a matter of law.

In this State, "domicile" is defined differently for voting purposes than for other purposes of the law. *See* RSA 21:6, :6-a; Laws 1981, 261:2. The applicable voting statute reads, in pertinent part:

> "I. Every inhabitant of the state, having a fixed and permanent established domicile . . . shall have a right at any meeting or election, to vote in the town . . . in which he is domiciled. The determinant of one's domicile is a question of factual physical presence incorporating an intention to reside for an indefinite period. This domicile is the voter's residence to which, upon temporary absence, he has the intention of returning. This domicile is that place in which he dwells on a continuing basis for a significant portion of each year."

RSA 654:1, I (Supp. 1983). The statute does not provide clear guidance in cases involving multiple residences. In such cases, the finder of fact must apply the general rules of law governing a change of domicile:

> "Since a domicile once acquired continues until displaced by a subsequent domicile of choice, the acquisition of a second residence will not disturb the pre-existing domicile unless there is clear and convincing evidence to the contrary. Thus, the burden usually is on the person attempting to establish a new domicile to show an intention has developed to make the new home the principal one and by that process displace the previously existing domicile."

E. SCOLES AND P. HAY, CONFLICT OF LAWS § 4.21, at 182 (1984) (footnote omitted) (hereinafter SCOLES & HAY); *see Bailey v. Bailey*, 93 N.H. 259, 261, 40 A.2d 581, 582 (1945).

While the plaintiff must show that he has "abandoned" his domicile in Cambridge, *Chase v. Chase*, 66 N.H. 588, 592, 29 A. 553, 556 (1891), this does not mean (as the defendants argue) that he must have abandoned his physical place of *residence* there. The question is, rather, whether Mr. Every in 1982 intended to make Madison his domicile; *i.e.*, "his principal residence . . . or the one

place he thinks of as home." *Kerby v. Charlestown*, 78 N.H. 301, 303, 99 A. 835, 836 (1916).

■■ As evidence of this intent, the plaintiff's assertions must be weighed against his actions. *McGee v. Bragg*, 94 N.H. 349, 352, 53 A.2d 428, 430 (1947).

> "Important evidence will be reflected in the amount of time that is spent at each of the residences and the purpose for which the time is spent. . . . The individual's relationship to the community in which each home is located and the extent of one's participation in the community affairs often evince the individual's attitude toward that dwelling place and is [sic] significant evidence for the identification of the principal home."

SCOLES & HAY, *supra* § 4.22, at 182.

■ In view of the evidence as to the amount of time Mr. Every spends in Madison, his above-mentioned involvement in community affairs, and particularly the change in his son's school, we conclude that the trial court could properly find that Mr. Every intended in 1982 to make Madison his principal residence, and rule that he established his "domicile" there at that time. Accordingly, we find no error in the trial court's determination that George Every was domiciled in Madison in 1982.

*Affirmed.*

All concurred.