NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

6th Circuit Court-Concord Probate Division
No. 2021-0408

IN RE GUARDIANSHIP OF D.E.

Submitted: January 5, 2023
Opinion Issued: November 16, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Laura E. B. Lombardi, senior assistant attorney general, on the brief), for the petitioner.

Brown & Bouchard PLLC, of Concord (Cassandra A. Brown on the brief), for the respondent.

G.E., of Boxford, Massachusetts, on the brief, the self-represented guardian.

HANTZ MARCONI, J. The respondent, D.E., appeals two decisions of the Circuit Court (Maloney, J.). The first denies the respondent's motion to dismiss and grants New Hampshire Hospital's (NHH) petition for guardianship. The second grants NHH's petition for involuntary admission. We affirm in part, vacate in part, and remand.

## I

On June 15, 2021, the respondent was admitted to NHH. At the time he was admitted and detained in the NHH facility, the respondent was subject to a lawful involuntary emergency admission effective as of June 13, 2021. See RSA 135-C:27 (2021). After a hearing on June 18, 2021, the circuit court found probable cause for the involuntary emergency admission. See RSA 135-C:31 (2021). A subsequent involuntary emergency admission petition was not filed. On June 29, 2021, NHH filed a petition for non-emergency involuntary admission. The court scheduled a hearing on NHH's involuntary admission petition for July 15, 2021. On June 30, 2021, NHH filed a petition for guardianship and requested that it be heard simultaneously with the involuntary admission petition. The court held a hearing on both petitions over two days on July 15, 2021 and August 5, 2021, after which it concluded that the respondent "is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself" and ordered him committed to NHH for a period of two years. The trial court further concluded that a power of attorney and springing medical proxy given by the respondent to the respondent's brother, G.E., were "insufficient to provide care" to the respondent and appointed G.E. as the respondent's guardian. This appeal followed.

## II

Before we turn to the merits of the two petitions, we address the respondent's argument that the trial court erred in hearing both the guardianship petition and the involuntary admission petition simultaneously. It is the respondent's position that "[c]onducting both the involuntary admissions hearing and the guardianship hearing together deprived [him] of due process rights." (Bolding omitted.) We note that the respondent does not specify a state constitutional provision under which his argument arises; thus, we construe his argument to be made under the Federal Constitution. See Vincent v. MacLean, 166 N.H. 132, 135 (2014) (where the plaintiff did not identify whether his due process claims arise under the State or Federal Constitutions and failed to cite a provision of either constitution, the argument was deemed to be made under the Federal Constitution only). Nevertheless, we will not review constitutional issues on appeal that were not presented to the trial court. N.H. Dept. of Corrections v. Butland, 147 N.H. 676, 679 (2002). At the joint hearing, the respondent objected to the hearings being held simultaneously because granting the involuntary admission petition "would resolve the issues that were raised in the guardianship petition" and if it were not granted, "it would then make the guardianship petition moot." He also articulated that he believed Massachusetts would be a more appropriate venue for a guardianship petition, should one be necessary. However, he raised no constitutional objection, predicated on due process or otherwise, to the

2

hearings being held simultaneously. Thus, the respondent's due process argument, raised for the first time on appeal, is not preserved. Id.

Further, even if we were to construe the respondent's arguments to the trial court as raising a constitutional issue, the issue has not been sufficiently developed in his brief. The respondent does not support, with any legal authority, his position that he "was entitled to have two separate final evidentiary hearings for the two separate petitions." Rather, he summarily states that doing so "deprived [him] of due process rights." (Bolding omitted.) As a result, even if preserved in the trial court, we conclude that the issue is insufficiently developed for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("[A] mere laundry list of complaints regarding adverse rulings by the trial court, without developed legal argument, is insufficient to warrant judicial review." (quotation omitted)).

III

We now turn to the trial court's order on the petition for involuntary admission. The respondent asserts that, because he was not a resident of New Hampshire, nor was he "under arrest or held in protective custody by law enforcement," the trial court lacked jurisdiction to hear the petition under RSA 135-C:20, II (2021). Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought: the extent to which a court can rule on the conduct of persons or the status of things. In re D.O., 173 N.H. 48, 51 (2020). A court lacks power to hear or determine a case concerning subject matter over which it has no jurisdiction. Id. A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction. Id.

Determining whether the circuit court had subject matter jurisdiction to hear the petition requires us to engage in statutory interpretation. Id. at 51-52. The interpretation of a statute is a question of law, which we review de novo. Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 733 (2020). In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. We do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent in light of the policy or purpose sought to be advanced by the statutory scheme. Id. Absent an ambiguity, we will not look beyond the language of the statute. Id.

3

RSA 135-C:20, II states, in relevant part: "For proceedings under RSA 135-C:34-54, jurisdiction is vested in the probate court in the county where the person sought to be admitted resides or is detained." "Although RSA chapter 135-C refers to the 'district court' and the 'probate court,' those references are 'deemed to be to the New Hampshire circuit court' pursuant to RSA 490-F:18." Doe v. Comm'r, N.H. Dep't of Health & Human Servs., 174 N.H. 239, 250 n.1 (2021) (quoting RSA 490-F:18 (Supp. 2022)); see also RSA 490-F:3 (Supp. 2022). "Each circuit court location shall have the authority to hear all cases within the subject matter jurisdiction of the circuit court." RSA 490-F:2 (Supp. 2022). Thus, any circuit court location has authority over proceedings under RSA 135-C:34-54 (2021), so long as "the person sought to be admitted resides or is detained" within any county in New Hampshire. See RSA 135-C:20, II; RSA 490-F:2. Accordingly, in order for the circuit court to have subject matter jurisdiction over the petition, the respondent must either: (1) be lawfully detained in New Hampshire; or (2) reside in New Hampshire. RSA 135-C:20, II; RSA 490-F:2, :3. The respondent asserts that the circuit court did not have jurisdiction because he was not lawfully detained at the time the non-emergency involuntary admission petition was filed and because he was not, nor has he ever been, a resident of New Hampshire.

We first address the issue of detention. When an involuntary emergency admission petition is filed under RSA 135-C:27, the subject of the petition must be examined by an "approved physician, approved PA, or approved APRN, as defined in RSA 135-C:2, II-a." RSA 135-C:28, I (2021). If the approved medical provider finds "that the person to be admitted meets the criteria of RSA 135-C:27," then the person may be admitted after the provider completes a certificate explaining the basis for admission. Id. Once the certificate for an involuntary emergency admission is completed, the person at issue is not free to leave, but, rather, is deemed to be in the custody of the New Hampshire Department of Health and Human Services. Doe, 174 N.H. at 252. Thus, once a certificate for involuntary emergency admission is issued, the admitted person is not free to leave and is, therefore, "detained" within the plain meaning of RSA 135-C:20, II. See Webster's Third New International Dictionary 616 (unabridged ed. 2002) (defining "detain" as "to hold or keep in or as if in custody").

However, detention pursuant to an involuntary emergency admission is limited by RSA 135-C:32 (2021). RSA 135-C:32 provides that "[n]o person shall be admitted for an involuntary emergency admission under RSA 135-C:27-33 for longer than a 10-day period, not including Saturdays and Sundays, unless a subsequent petition for involuntary emergency admission . . . is ordered . . . or unless a petition requesting a judicial hearing on the issue of involuntary admission under RSA 135-C:34-54 has been filed with the appropriate probate court within the involuntary admission period." RSA 135-C:32.

4

Here, NHH concedes that the petition for non-emergency involuntary admission was filed 12 days, excluding Saturdays and Sundays, after the effective date of the involuntary emergency admission, 2 days after the 10-day limit imposed by RSA 135-C:32. As a result, the respondent, although still being held at NHH at the time, was not lawfully detained at NHH at the time the non-emergency petition was filed. RSA 135-C:32. NHH asserts that the circuit court could retain jurisdiction as a result of an unlawful detention because "[n]othing in [the dictionary definition] suggests that 'detain' is limited to a restraint pursuant to any particular legal authority." Thus, it is NHH's position that a person may be subject to involuntary admission proceedings despite an illegal detention being the only basis for the court's jurisdiction. If we were to accept this argument, jurisdiction could be based solely on circumstances that violate a defendant's due process rights and that could otherwise justify a writ of habeas corpus. See, e.g., Doe, 174 N.H. at 246-47 ("Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (brackets omitted)). We do not believe the legislature intended to grant the circuit court the authority to conduct involuntary admission proceedings when the person sought to be admitted is within the court's jurisdiction only because the person is unlawfully detained within New Hampshire. While we appreciate the dissent's construction of the statute to confer expansive jurisdiction on the circuit court, we note that the circuit court is a court of specific jurisdiction, unlike courts of general jurisdiction from which the dissent draws support. State v. Graham, 175 N.H. 61, 62 (2022). Accordingly, we conclude that the respondent was not "detained" for the purposes of jurisdiction under RSA 135-C:20 at the time that the non-emergency involuntary admission petition was filed.

Next, we consider residency. See RSA 135-C:20, II. The respondent asserts that the circuit court lacked jurisdiction because he was not a resident of New Hampshire. He asserts that he "was a resident of Massachusetts and was accessing healthcare at [a clinic] in Massachusetts" before coming to New Hampshire. NHH argues that the circuit court has jurisdiction because the respondent "was homeless, living in hotels in Manchester," "did not have any other place to stay," and "was receiving medical care through the Manchester VA." NHH urges us to conclude that because the word "resides" is not defined in the statute, we should conclude that the dictionary definition of the term, rather than the statutory definition of "resident" contained in RSA 21:6 (2020), controls.

Through RSA chapter 21 (2020), the legislature provides guidance on how to engage in statutory construction. RSA 21:1 (2020) directs that "[i]n the construction of all statutes the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute." (Emphasis added.) RSA

5

chapter 21 further directs that a

> resident or inhabitant or both of this state and of any city, town, or
> other political subdivision of this state shall be a person who is
> domiciled or has a place of abode or both in this state . . . and who
> has, through all of his or her actions, demonstrated a current
> intent to designate that place of abode as his or her principal place
> of physical presence to the exclusion of all others.

RSA 21:6.

NHH asserts that this definition "cannot be what the legislature intended" when it used the term "resides" in RSA 135-C:20, II. We agree. To establish jurisdiction under the definition of "resident" in RSA 21:6, a person would need to intend to designate New Hampshire as his or her "principal place of physical presence to the exclusion of all others." RSA 21:6 (emphasis added). Such a rigid definition would exclude seasonal residents, college students, or other inhabitants who are present in New Hampshire for extended periods, but who maintain a residence out-of-state. This interpretation runs counter to the purpose of RSA chapter 135-C, which is, inter alia, to "[p]revent mentally ill persons from harming themselves or others." RSA 135-C:1, I(c) (2021). A mentally ill person need not reside exclusively in New Hampshire to pose a danger in New Hampshire to themselves or others. Accordingly, the dictionary definition of "reside" provides a definition more consistent "with the manifest intent of the legislature": "[t]o dwell permanently or for a considerable time, to have one's settled or used home in or at a particular place." Oxford English Dictionary, https://www.oed.com/dictionary/reside_v1?tab=meaning_and_use#25944831 (last visited August 28, 2023); RSA 21:1. Pursuant to this definition, whether a person "resides" in New Hampshire for the purposes of RSA 135-C:20, II depends on the circumstances of their presence in New Hampshire. We note that mere physical presence is not enough to meet this definition. Had the legislature wished to grant jurisdiction in cases when the person was merely physically present within the state, it could have done so. Compare RSA 135-C:20, II (resides), with RSA 464-C:10 (2018) (granting special jurisdiction to the court to appoint a guardian or conservator where the subject of the guardianship is "physically present in this state" (emphasis added)).

Here, whether the respondent resided in New Hampshire at the time the emergency admission expired and the non-emergency involuntary admission petition was filed presents a question of fact, which the trial court should consider in the first instance. Cf. McGee v. Bragg, 94 N.H. 349, 351 (1947); Ayer v. Weeks, 65 N.H. 248, 249 (1889). For this reason, we vacate the trial court's decision regarding the respondent's involuntary admission and remand for the trial court to determine whether it has subject matter jurisdiction to hear the petition under RSA 135-C:20.

6

We next turn to the respondent's appeal of the trial court's order appointing a guardian over the respondent's person and estate. On appeal, the respondent challenges the sufficiency of the evidence. Our task is to review the record to determine whether it supports the trial court's finding that the petitioner proved these statutory components beyond a reasonable doubt. In re Guardianship of G.S., 157 N.H. 470, 473-74 (2008). We examine whether the trial court's actual or implicit factual findings on the statutory components required for guardianship are reasonably supported by competent evidence. Id. at 474. However, we defer to a trial court's judgment on such issues as resolving conflicts in testimony, measuring the credibility of witnesses, and determining the weight to be given to testimony. Id. "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4 (2019). Therefore, we do not reweigh the evidence to determine whether we would have ruled differently. In re G.S., 157 N.H. at 474.

The respondent first asserts that "[t]here was insufficient evidence to support the trial court's finding that [the respondent] should be in a guardianship." (Bolding omitted.) He argues that he is not "incapacitated" within the meaning of RSA 464-A:2, XI (2018). In addition, he asserts that guardianship "is not the least restrictive option" and that G.E.'s "springing healthcare proxy and durable power of attorney" are sufficient to address the respondent's needs.

"Incapacity" is a "legal, not a medical, disability," and refers to "any person who has suffered, is suffering or is likely to suffer substantial harm due to an inability to provide for his personal needs for clothing, shelter, health care or safety or an inability to manage his or her property or financial affairs." RSA 464-A:2, XI; see also In re Guardianship of C.R., 174 N.H. 804, 807 (2022). Incapacity is measured by "functional limitations," RSA 464-A:2, XI, that "impair [a person's] ability to participate in and perform minimal activities of daily living that secure and maintain proper food, clothing, shelter, health care or safety for himself," RSA 464-A:2, VII; see also In re C.R., 174 N.H. at 807. "Isolated instances of simple negligence or improvidence, lack of resources or any act, occurrence or statement if that act, occurrence or statement is the product of an informed judgment shall not constitute evidence of inability to provide for personal needs or to manage property." RSA 464-A:2, XI. Before imposing a guardianship, the trial court must find, beyond a reasonable doubt, that the "guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the civil rights and liberties of the proposed ward." RSA 464-A:9, III(d) (2018); see also In re C.R., 174 N.H. at 809. "Least restrictive form of intervention" means that the guardianship imposed "represents only those limitations necessary to provide him or her with needed care and rehabilitative services, and that the ward shall

enjoy the greatest amount of personal freedom and civil liberties consistent with his or her mental and physical limitations." RSA 464-A:2, XIV.

The record supports the trial court's findings that the respondent is "incapacitated," that guardianship "is necessary as a means of providing for [the respondent's] continuing care," and that there "are no available alternative resources[] which are suitable with respect to [the respondent's] welfare, safety or rehabilitation and for the prudent management of [his] property and financial affairs." The trial court received testimony from the psychiatrist who treated the respondent, a psychiatrist appointed by the court to evaluate the respondent, and the respondent's brother, who testified extensively to the respondent's behavior in the months leading up to the involuntary emergency admission. The respondent's brother testified that the respondent was "so afraid of people poisoning him, that . . . he was living in his car." A treating psychiatrist testified that the respondent "was not able to comprehend and understand information" and that "his speech is not productive and is — we call it hallucinative speech." In addition, the psychiatrist appointed by the court opined that the respondent's "paranoia, and disorganization leads to his inability to engage in self-care." Based on the testimony provided, as well as the medical records and other documentation in the record, the trial court could have concluded beyond a reasonable doubt that the respondent had "[f]unctional limitations" as a result of his mental illness and that these limitations caused him to be unable to "perform minimal activities of daily living that secure and maintain proper food, clothing, shelter, health care or safety for himself." RSA 464-A:2, VII. Further, given G.E.'s testimony that he was unable to provide sufficient care and support to the respondent despite having a power of attorney and health care proxy, and given the testimony that without proper medical aid the respondent's welfare and safety were significantly at risk, we conclude that the trial court could have concluded beyond a reasonable doubt that a guardianship is the "least restrictive form of intervention." RSA 464-A:2, XIV, :9, III(d).

Finally, the respondent argues that, if the trial court did not err in appointing a guardian, then it "erred in appointing a guardian from [the respondent's] family when he expressed a clear wish that . . . it be an independent, professional guardian." (Bolding omitted.) He cites RSA 464-A:10 (2018) and asserts that because he "has high-level intellectual functioning, comprehension, and executive functioning," the trial court should have considered his preferences in appointing a guardian. When a finding of incapacity has been made, it is within the trial court's discretion to "appoint a guardian of the person and estate, or the person or the estate, as requested in the petition and confer specific powers of guardianship on the proposed guardian." RSA 464-A:9. Thus, we will review the trial court's appointment of G.E. as guardian under our unsustainable exercise of discretion standard.

8

"Any person who agrees to so serve may be appointed guardian of the person and estate." RSA 464-A:10, I. A competent person may nominate or exclude a person to be guardian over his person or estate by a written instrument. RSA 464-A:10, IV(a). "A qualified person nominated as guardian who is willing to serve shall be appointed unless the court finds that such person would not be able to carry out the reasonably foreseeable duties of a guardian in the particular circumstances." RSA 464-A:10, IV(c). The court may appoint a family, volunteer, professional or public guardian. RSA 464-A:10, I. Here, NHH proposed G.E. as a family member guardian. The respondent did not nominate or exclude any person by written instrument and did not propose any other potential guardian, whether volunteer or professional. Thus, even if required to consider the ward's preferences, the trial court did not unsustainably exercise its discretion in appointing G.E. based on the conclusion that he was both qualified and willing to serve and on the absence of any proposed alternative. Leone v. Leone, 161 N.H. 566, 568 (2011) (explaining that under an unsustainable exercise of discretion standard, "we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made"). Accordingly, we find no error.

Affirmed in part; vacated in part; and remanded.

MACDONALD, C.J., and HICKS and DONOVAN, JJ., concurred; BASSETT, J., concurred in part and dissented in part.

BASSETT, J., concurring in part and dissenting in part. The respondent, D.E., appeals two orders of the Circuit Court (Maloney, J.). The first order granted New Hampshire Hospital's (NHH) petition for guardianship. The majority affirms this order, a decision with which I concur. The second order granted NHH's petition for nonemergency involuntary admission. The majority vacates this order, a decision from which I respectfully dissent.

A petition and certificate for the involuntary emergency admission of the respondent was completed on June 13, 2021, and the respondent was admitted to NHH on June 15. See RSA 135-C:27 (2021). After a hearing on June 18, 2021, the circuit court found probable cause for the involuntary emergency admission, finding that the respondent's "behavior demonstrates that he . . . so lacks the capacity to care for his . . . own welfare that there is a likelihood of death, serious bodily injury, or serious debilitation if admission is not ordered." See RSA 135-C:27, I(c), :31 (2021). On June 29, 2021, NHH filed a petition for nonemergency involuntary admission that alleged that the respondent "is presently detained on I Unit at New Hampshire Hospital . . . in the County of Merrimack." This petition was accompanied by a certificate of the examining physician, which states, inter alia, that the respondent was

9

admitted to NHH "due to his dangerous behaviors, which are likely to cause serious injury to himself and others." See RSA 135-C:36, I(c) (2021) (providing that a petition for nonemergency involuntary admission shall include a certificate from a physician who has examined the person sought to be admitted within five days of the date the petition is filed and who agrees that the person satisfies the standard for admission set forth in RSA 135-C:34 (2021)). The petition for nonemergency involuntary admission was filed within ten days (excluding Saturdays and Sundays) after the issuance of the order finding probable cause, but more than ten days (excluding Saturdays and Sundays) after the effective date of the involuntary emergency admission.

The circuit court scheduled a hearing on NHH's nonemergency involuntary admission petition for July 15, 2021. On June 30, 2021, NHH filed a petition for guardianship and requested that it be heard simultaneously with the nonemergency involuntary admission petition. The court held a hearing on both petitions over two days on July 15, 2021 and August 5, 2021, after which it concluded that the respondent "is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself" and ordered him admitted to NHH on an involuntary basis for a period of two years. The trial court also appointed G.E. as the respondent's guardian. This appeal followed.

I begin by considering the issue of whether the trial court had subject matter jurisdiction over the petition for nonemergency involuntary admission. Subject matter jurisdiction is jurisdiction over the nature of the case and the type of relief sought: the extent to which a court can rule on the conduct of persons or the status of things. In re D.O., 173 N.H. 48, 51 (2020). A court lacks power to hear or determine a case concerning subject matter over which it has no jurisdiction. Id. A party may challenge subject matter jurisdiction at any time during the proceeding, including on appeal, and may not waive subject matter jurisdiction. Id. In addition, the court may raise the issue of subject matter jurisdiction sua sponte. State v. Demesmin, 159 N.H. 595, 597 (2010).

Determining whether the circuit court had subject matter jurisdiction to hear the petition requires us to engage in statutory interpretation. See In re D.O., 173 N.H. at 51-52. The interpretation of a statute is a question of law, which we review de novo. Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 733 (2020). In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent in light of the policy or purpose sought to be advanced by the statutory scheme. Id. Absent an

10

ambiguity, we will not look beyond the language of the statute. Id. It has long been settled here that we will not interpret a statute so as to produce an unjust and seemingly illogical result. State v. Roger M., 121 N.H. 19, 21-22 (1981); see State v. Carpentino, 166 N.H. 9, 20 (2014).

RSA 135-C:20, II (2021) states, in relevant part: "For proceedings under RSA 135-C:34-54, jurisdiction is vested in the probate court in the county where the person sought to be admitted resides or is detained." As the majority explains, references to "probate court" are now deemed to refer to the "circuit court," and each circuit court location has the authority to hear all cases within the subject matter jurisdiction of the circuit court. See RSA 490-F:2, :3, :18 (Supp. 2022). The majority construes section 20 as requiring that in order for the circuit court to have jurisdiction over the subject matter — that is, jurisdiction over the nature of the case and the relief sought — the person sought to be admitted must either reside in New Hampshire or be detained in New Hampshire at the time that the petition is filed. The majority then concludes that, contrary to the allegation in the petition for nonemergency involuntary admission, the respondent was not "detained" within the meaning of the statute. The majority therefore vacates the trial court's involuntary admission order and remands for consideration of whether the respondent "resided" in New Hampshire at the time that the nonemergency involuntary admission petition was filed.

Assuming, without deciding, that the circuit court's subject matter jurisdiction over nonemergency involuntary admission petitions depends upon whether the person sought to be admitted resides or is detained in New Hampshire, I would hold that the respondent in this case was "detained" when the nonemergency involuntary admission petition was filed on June 29, and, therefore, that the circuit court had subject matter jurisdiction. Accordingly, I would affirm the circuit court's order admitting the respondent to NHH on an involuntary basis.

When an involuntary emergency admission petition is filed under RSA 135-C:27, the subject of the petition must be examined by an "approved physician, approved PA, or approved APRN, as defined in RSA 135-C:2, II-a." RSA 135-C:28, I (2021). If the approved medical provider finds "that the person to be admitted meets the criteria of RSA 135-C:27," then the person may be admitted after the provider completes a certificate explaining the basis for admission. Id. Once the certificate for an involuntary emergency admission is completed, the person at issue is not free to leave, but, rather, is deemed to be in the custody of the New Hampshire Department of Health and Human Services. Doe v. Comm'r, N.H. Dep't of Health & Human Servs., 174 N.H. 239, 252 (2021). Thus, once a certificate for involuntary emergency admission is issued, the admitted person is not free to leave and is, therefore, "detained" within the plain meaning of RSA 135-C:20, II. See Webster's Third New

11

International Dictionary 616 (unabridged ed. 2002) (defining "detain" as "to hold or keep in or as if in custody").

RSA 135-C:32 provides that "[n]o person shall be admitted for an involuntary emergency admission under RSA 135-C:27-33 for longer than a 10-day period, not including Saturdays and Sundays, unless a subsequent petition for involuntary emergency admission . . . is ordered . . . or unless a petition requesting a judicial hearing on the issue of involuntary admission under RSA 135-C:34-54 has been filed with the appropriate probate court within the involuntary admission period." RSA 135-C:32 (2021).

Here, NHH concedes that the petition for nonemergency involuntary admission was filed more than ten days, excluding Saturdays and Sundays, after the effective date of the involuntary emergency admission, and therefore after the involuntary emergency admission period had ended. See RSA 135-C:32. However, the respondent still remained at NHH when the nonemergency involuntary admission petition was filed with the circuit court; there is no evidence or allegation that he had been discharged by NHH prior to that time. See RSA 135-C:33 (2021). Indeed, the majority agrees that the respondent was "still being held at NHH at the time," but states that he was not "lawfully detained" at NHH. Therefore, the majority concludes, the respondent was not "detained" within the meaning of RSA 135-C:20, II, and the circuit court lacked subject matter jurisdiction unless, on remand, it can be proved that the respondent "resided" in New Hampshire when the nonemergency involuntary admission petition was filed.

Thus, the crux of the matter before us is whether, as the majority contends, "detained" means only "lawfully detained." The majority agrees that the plain meaning of "detain" is "to hold or keep in or as if in custody." Webster's Third New International Dictionary, supra. Nothing in this definition suggests that "detain" is limited to being held or kept in custody pursuant to any particular legal authority. Rather, just the opposite. Furthermore, "detain" encompasses cases in which one is held or kept "as if" in custody. Thus, while the involuntary emergency admission period may have expired pursuant to RSA 135-C:32, it is undisputed that the respondent had not been discharged and was still at NHH when the petition was filed with the circuit court. Plainly then, the respondent was, at a minimum, being held or kept at NHH "as if" in custody. Therefore, according to the common and approved usage of the language, the respondent was "detained." See RSA 21:6 (2020).

Although the majority acknowledges, as it must, that we first construe statutory language according to its plain and ordinary meaning, and that we "interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include," the majority then fails to construe the statutory language according to its plain meaning, and instead adds language that the legislature did not see fit to

12

include, apparently concluding that the legislature meant to say "lawfully detained" rather than "detained."[1]  In doing so, I believe that the majority errs.

That the legislature meant what it said when it chose the word "detained" is confirmed by an examination of the full statutory scheme.  We have explained that the process of an involuntary <u>emergency</u> admission is intended to progress logically and seamlessly through a series of steps, beginning with the completion of the involuntary emergency admission certificate, continuing with the delivery to a receiving facility such as NHH, and concluding with a probable cause hearing.  <u>Doe v. Comm'r, N.H. Dep't of Health & Human Servs.</u>, 174 N.H. at 254.  The involuntary admission process then continues logically and seamlessly through a further series of steps making up the <u>nonemergency</u> involuntary admission process.  Following the finding of probable cause, the statutory scheme envisions that the admitted person shall be further evaluated at the receiving facility within a ten-day period (not including Saturdays and Sundays).  If at any point during the period of involuntary emergency admission it is determined that the admitted person no longer meets the criteria for involuntary admission under RSA 135-C:27, then he or she is discharged.  RSA 135-C:33, I.  On the other hand, if it is determined during the ten-day period that the admitted person satisfies the standard for nonemergency involuntary admission set forth in RSA 135-C:34, then a petition for nonemergency admission on an involuntary basis is filed pursuant to RSA 135-C:36 — that petition must include a certificate from the person who examined the admitted person, made within five days of the date of filing the petition, that the admitted person satisfies the standard for nonemergency involuntary admission in RSA 135-C:34.  <u>See</u> RSA 135-C:36, I(c).  The filing of the petition with the circuit court before the expiration of the involuntary emergency admission period extends the period of involuntary emergency admission under RSA 135-C:27-:33 until the issuance of the order on that petition.  RSA 135-C:32.

Viewing the statutory scheme as a whole, it is apparent that the legislature intended one of two outcomes following an involuntary emergency admission and a finding by the circuit court of probable cause.  First, if at any time during the period of involuntary emergency admission the admitted person no longer is in such mental condition as a result of mental illness as to pose a likelihood of danger to himself or others, then the admitted person should be discharged from the receiving facility.  <u>See</u> RSA 135-C:27, :33.  Second, if during the period of involuntary emergency admission the admitted

---

[1] Had the legislature intended "detained" in RSA 135-C:20 (2021) to exclude so-called "unlawful detentions" as the majority contends, it knew how to do so.  RSA 627:5, I (2016) provides that a law enforcement officer is justified in using non-deadly force to prevent the escape of "an arrested or detained person, unless he knows that the arrest or detention is illegal."  Had the legislature intended a similar restriction to apply in RSA 135-C:20, it could have used similar language.

person is determined to be in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others, see RSA 135-C:34, then a petition for nonemergency involuntary admission should be filed with the circuit court and the admitted person's period of involuntary emergency admission should continue until the circuit court has ruled on the petition. This furthers the legislature's stated purposes, which include enabling the Department of Health and Human Services to maintain an effective and efficient system of services for persons with mental illness, reducing the occurrence, severity, and duration of mental disabilities, and preventing mentally ill persons from harming themselves or others. RSA 135-C:1, I (2021).

In addition, it is significant that the involuntary admission process can begin with an examination of any person located in New Hampshire — the process is not limited to persons who reside in New Hampshire. See RSA 135-C:28 (2021). The process then seamlessly provides for review in the circuit court to determine whether probable cause for the initial involuntary emergency admission exists, followed by a petition to the circuit court to determine whether continued nonemergency involuntary admission is warranted. Thus, it is clear that the legislature intended that any person, regardless of whether the person resides in New Hampshire, who is involuntarily admitted pursuant to RSA 135-C:28 should be entitled to a probable cause hearing followed by, when necessary, a hearing on a petition for nonemergency involuntary admission to determine whether additional treatment is necessary.

In the instant case, NHH attempted to comply with the statutory scheme. After the circuit court found probable cause that there was "a likelihood of death, serious bodily injury, or serious debilitation if admission is not ordered," the respondent's condition did not improve such that he no longer posed a likelihood of danger to himself or others. Therefore, NHH did not discharge him. Rather, the respondent was examined and found to be in such a mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others, and NHH accordingly filed a petition with the circuit court seeking an order for nonemergency involuntary admission. Unfortunately, for reasons not explained in the record, this petition was filed shortly after the involuntary emergency admission period had expired.

The question thus presented is which construction of the statute best furthers the legislative intent with respect to this short delay in filing. The answer becomes apparent upon consideration of RSA 135-C:1 (2021), which sets forth the purposes of RSA chapter 135-C. Construing "detained" in accordance with its plain meaning furthers the chapter's purposes of providing services for persons with mental illness, reducing the severity and duration of mental disabilities, and preventing mentally ill persons from harming themselves or others. RSA 135-C:1, I. In this case, when the petition for

14

nonemergency involuntary admission was filed on June 29, the respondent had been certified as being in such a mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others. By construing "detained" contrary to its plain meaning and adding the notion of "legal detention," the majority concludes that the legislature intended that the circuit court should be deprived of the jurisdiction necessary to order the provision of continued treatment for the respondent so as to alleviate the potentially serious likelihood of danger that the respondent posed to himself or to others. This construction is inimical to the legislature's expressed purposes of providing services for persons with mental illness, reducing the severity and duration of mental disabilities, and preventing mentally ill persons from harming themselves or others. RSA 135-C:1, I.

In addition, the majority's construction of "detained" leads to illogical and unjust results. The majority speculates that the legislature would not want the circuit court to have jurisdiction over the respondent because the respondent was being "unlawfully detained." The majority argues that the detention violated the respondent's "due process rights" and could "justify a writ of habeas corpus." In other words, the majority concludes that the legislature would choose as part of the remedy for the alleged violation of the respondent's due process rights that the circuit court not have jurisdiction to order that the respondent receive continued treatment pursuant to a nonemergency involuntary admission. The majority acknowledges, however, that if the respondent resided in New Hampshire at the time that the petition for nonemergency involuntary admission was filed with the circuit court, then the court would have continuing jurisdiction regardless of any violation of the respondent's due process rights. In essence, the majority concludes that the legislature intended that only persons who do not reside in New Hampshire should receive this "remedy" — a New Hampshire resident who is "unlawfully detained" when the petition for nonemergency involuntary admission is filed is not entitled to similar treatment.[2] Such disparate treatment is both illogical and unjust. See State v. Roger M., 121 N.H. at 21-22; Carpentino, 166 N.H. at 20. If the legislature truly intended to deprive the circuit court of subject matter jurisdiction over nonemergency involuntary admission petitions when the petition is filed after the expiration of the involuntary emergency admission

---

[2] While the majority correctly notes that civil commitment for any purpose constitutes a significant deprivation of liberty, the Supreme Court has noted that one who is suffering from a debilitating mental illness and in need of treatment is not "wholly at liberty." Addington v. Texas, 441 U.S. 418, 429 (1979). "[I]n civil commitment cases the state reflects a parens patriae concern for the treatment of the seriously disturbed citizen. Hospitalization of the mentally ill is sought not as an end in itself, but only as a necessary means for giving medical treatment and protection. As a result, the commitment process cannot be viewed as a strictly adversarial one; in most cases, the ultimate interests of the state and the individual in the care and treatment of the latter should be congruent." Matter of Nelson, 408 A.2d 1233, 1237 (D.C. 1979).

period, surely it would have provided the same "remedy" to those who reside in New Hampshire as to those who reside elsewhere.

Finally, I question the premise of the majority's rationale regarding the legislature's intent. Without mentioning the purposes of RSA chapter 135-C that the legislature expressly set forth in RSA 135-C:1, the majority assumes that the legislature would not intend to grant jurisdiction to the circuit court to hear a nonemergency involuntary admission petition when the respondent had been detained under circumstances that the majority contends violated his due process rights and could justify a writ of habeas corpus. But the majority fails to explain why this is so. Assuming that the majority is correct that a writ of habeas corpus would have been justified, the legislature has specifically provided that that remedy be available. See RSA 135-C:54 (2021) (providing that this chapter shall not be construed to deprive any person of the benefits of the writ of habeas corpus). Nothing in the statute or in the constitution suggests that the remedy for an alleged unlawful detention should be to deprive the circuit court of jurisdiction over a petition for nonemergency involuntary treatment.

In Frisbie v. Collins, 342 U.S. 519 (1952), the Supreme Court considered a habeas corpus case in which the respondent alleged that while he was living in Illinois, Michigan officers forcibly seized and handcuffed him and took him to Michigan, where he was charged with and convicted of murder in state court. The Supreme Court held that the power of the state court to try a person for crime is not impaired by the fact that the person was brought within the court's jurisdiction by reason of a forcible abduction. Frisbie, 342 U.S. at 522.

> [D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

Id.; see also United States v. Alvarez-Machain, 504 U.S. 655 (1992) (where United States Drug Enforcement Administration officials were responsible for forcible kidnapping of citizen of Mexico, who was flown to Texas and arrested for murder, federal District Court had jurisdiction — the fact of defendant's forcible abduction does not prohibit his trial in a court in the United States for violation of the criminal laws of the United States). Similarly, here, whatever remedies the respondent may have had for his alleged "unlawful detention," a matter on which I express no opinion, the available remedies should not include depriving the circuit court of subject matter jurisdiction. Cf. State v. Riley, 980 N.E.2d 920, 922 n.1 (Ind. Ct. App. 2013) (in criminal case, remedies for unlawful detention of defendant might include release from custody,

suppression of evidence, or damages, but not dismissal of the criminal charges).

In summary, I concur with the majority's affirmance of the trial court's order granting the petition for guardianship over the respondent. Because I would also affirm the trial court's order granting the petition for nonemergency involuntary admission, I respectfully dissent from the majority's decision to vacate that order.